STATE OF NEBRASKA, APPELLEE, V. GERALD RICHTER, APPELLANT.

481 N.W.2d 200

Filed March 13, 1992.   No. S-90-568.

Randall L. Lippstreu and Robert M. Harris, of Harris & Lippstreu, for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Gerald Richter appeals his conviction for third-offense drunk driving and refusal to provide a breath sample. The sole issue on appeal is whether the district court erred in affirming the ruling of the county court, which refused to dismiss the case based upon the speedy trial provisions of Neb. Rev. Stat. § 29-1207 (Reissue 1989).

The standard of review of factual determinations by the trial court in support of its decision on a speedy trial question is not explicitly addressed in any Nebraska case. However, generally, an appellate court is to "accord weight" to findings of fact by the trial court where such findings are supported by the record. *State v. Bennett*, 219 Neb. 601, 603, 365 N.W.2d 423, 425 (1985) (where "the finding of the trial court is supported by the record," we "can and do accord weight to that finding"). Cf., *State v. Beck*, 212 Neb. 701, 704, 325 N.W.2d 148, 151 (1982) ("[w]e can accord no weight to findings which find no support in the evidence"); *State v. Melton*, 239 Neb. 790, 794, 478 N.W.2d 341, 346 (1992) ("[i]n determining the correctness of a trial court's ruling on a *motion to suppress*, the Supreme Court will uphold the trial court's findings of fact unless those findings are *clearly erroneous*" (emphasis supplied)). As a general rule, a determination made by the trial court as to whether a complaint should be dismissed because of the failure of the State to provide the defendant with a speedy trial is a factual question which will be affirmed by the appellate court unless such was clearly erroneous.

A complaint charging Richter with third-offense drunk driving and refusal to submit to a blood, breath, or urine test was filed in county court on October 7, 1987. This case was captioned case No. T-62605-M. Richter appeared in court as

required on October 23, 1987.

Case No. T-62605-M was dismissed upon the State's motion on November 18, 1987. The defendant testified that he was in the office of the clerk of the county court to report a change of address and noticed across the counter a dismissal sheet on his pending case. Richter did not say what date that was. He also did not say what address change he made. He did say he asked for a copy of the dismissal and also asked about his bond, and was told that the bond was "being ready to be sent in the mail."

The State filed a new complaint against Richter on November 30, 1987, captioned case No. T-63416-M. The court transferred Richter's bond from the earlier case to case No. T-63416-M without securing the agreement of and absent any notice to the defendant. Service of the new complaint was attempted by the State by citation, pursuant to Neb. Rev. Stat. § 29-425 (Reissue 1989). The face of the citation found in the record certifies that it was served "United States Mail, postage prepaid." No return of service appears in the record.

The citation required Richter to appear in the county court on December 23, 1987. Richter failed to appear on that day. On January 5, 1988, the county court issued a warrant for Richter's arrest. Richter was not asked during the course of the later proceedings seeking dismissal because of the lack of a speedy trial whether he actually received the citation ordering his appearance on December 23, 1987.

Deputy Sheriff Dick Blaha was assigned the duty of serving the warrant on Richter. Blaha went to 1218 Avenue F in Scottsbluff—listed on the warrant as Richter's address—at least six times during the 30 days after the warrant issued, but never located Richter there. Richter testified that 1218 Avenue F was a legitimate address and that he lived there "around December, first part of December [of 1987]." No evidence was adduced by the State as to Richter's address during the month of January 1988.

Sometime after issuance of the warrant, according to the county court clerk's testimony, a man who identified himself as Gerald Richter called the county court clerk's office to inquire about the return of bond money. The clerk informed him that the charges against him, Richter, had been refiled and that there

was a warrant for his arrest. The clerk was unable to recall when the phone conversation took place. While the clerk was unable to positively identify the caller, she testified she was "pretty sure it was Gerald Richter."

Richter was ultimately arrested on the warrant on August 30, 1989. Richter told the arresting officer that he thought the charges against him had been dismissed.

Richter apparently gave several addresses to various law enforcement and court personnel prior to his ultimate arrest. At his initial arrest, Richter gave his address as Box 111, Mitchell, Nebraska. The warrant for Richter's arrest indicates that he lived at that address or at 1218 Avenue F, Scottsbluff, Nebraska. The docket sheet for Richter's October 7, 1987, court appearance lists his address as 1455 6th Street, Gering, Nebraska. The October 23, 1987, docket sheet states, "New address as of 11-12-87 1819 Ave I Scottsbluff."

Richter's pretrial motion for dismissal based on the absence of a speedy trial was denied, and the county court stated, "[T]he only reason Mr. Richter has not been tried is that he's not available for trial." The district court affirmed the action of the county court.

Richter assigns as error the deprivation of his rights to a speedy trial under § 29-1207 and Neb. Rev. Stat. § 29-1208 (Reissue 1989) and under both the U.S. and Nebraska Constitutions.

We dispose of the second assignment of error first. Richter's motion to dismiss in the trial court was not grounded on the speedy trial guarantees of either the U.S. or Nebraska Constitution. Therefore, he may not be heard on those arguments on appeal. Generally, a constitutional question not properly raised in the trial court will not be considered on appeal. *State v. Oldfield*, 236 Neb. 433, 461 N.W.2d 554 (1990).

Regarding his statutory claim, § 29-1207 provides in part, "(1) Every person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section. (2) Such six-month period shall commence to run from the date the indictment is returned or the information filed." There then follows a recitation of the time excludable from the 6-month limitation

because of the action of the defendant, such as the filing of motions which require a delay in proceedings or the absence or unavailability of the defendant.

Section 29-1208 provides that "[i]f a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, he shall be entitled to his absolute discharge from the offense charged and for any other offense required by law to be joined with that offense."

The first complaint in this case was filed on October 7, 1987, and dismissed on November 18, and a new complaint was filed on November 30, 1987. There were several events totaling 29 days which caused delays in the commencement of trial which were either properly chargeable to the defendant or not chargeable to the State. The events not chargeable to the State included the period of 12 days between the dismissal of the initial complaint and the filing of the new complaint when no charge was pending. See *State v. Sumstine,* 239 Neb. 707, 478 N.W.2d 240 (1991). This would move the last day for trial to May 6, 1988, as compared with the actual trial date of December 5, 1989.

However, the period of time between the apparent issuance of an arrest warrant on January 5, 1988, on the one hand, and the actual arrest of the defendant on the warrant on August 30, 1989, on the other hand, amounting to 603 days, if added to the preliminarily determined last day of trial of May 6, 1988, would move that date to December 30, 1989, and trial was held within that period. The question becomes, Was defendant absent or unavailable during that latter period of time within the meaning of § 29-1207?

Defendant appeared for arraignment on the original charge on October 23, 1987, as required. He entered a plea of not guilty, and trial was set for January 5, 1987. In the meantime, Richter learned that those charges had been dismissed. They were in fact dismissed on November 18, 1987. A new complaint was filed on November 30, 1987. There was evidence presented by the State that defendant learned of this new filing by way of a telephone conversation with the clerk of the county court. However, notice of charges and filing of complaints are not accomplished by telephone calls.

Nebraska law requires that a criminal defendant must be properly notified of the need to appear in court on a given date and time before failure to so appear can initiate a period of excludable time. *State v. Groves*, 238 Neb. 137, 469 N.W.2d 364 (1991); *State v. Beck*, 212 Neb. 701, 325 N.W.2d 148 (1982).

In *State v. Beck, supra*, this court held that the primary burden is upon the State to bring the accused person to trial within the time provided by law, and failure to do so entitles the defendant to an absolute discharge. The burden is on the State to prove an excludable time period. In reversing the judgment of the district court, which had found that the defendant was unavailable for trial during a period of time, this court reversed and observed that "[n]o evidence appears in the record showing the appellant and/or counsel were ever notified to appear." *Id.* at 704, 325 N.W.2d at 150.

An excludable period under § 29-1207(4)(d) does not begin if the defendant fails to appear at a hearing of which he or she has no notice. When this rule is applied in light of the burden upon the State to prove that any given period was excludable, see *State v. Sumstine, supra*, the State in this case was required to prove, by a preponderance of the evidence, that Richter had notice of the December 23, 1987, hearing for which he failed to appear.

A citation was issued in the new case on December 11, 1987. It commanded the defendant to appear in court on December 23, 1987. Richter did not appear on that date. However, the certificate of service indicates that the "CITATION, along with a copy of the charge attached was served upon the Defendant by United States Mail, postage prepaid, this 11th day of December, 1987 at the following address: 1218 Avenue F, Scottsbluff Nebraska."

A citation "may be served in the same manner as an arrest warrant, in the same manner as a summons in a civil action, or may be served by certified mail." § 29-425. It is clear from the record that no attempt was made to serve the citation on Richter in the manner required for an arrest; he was not taken into custody and brought before a magistrate or court. See, Neb. Rev. Stat. § 29-406 (Reissue 1989) (a warrant "shall command the officer to take the accused and bring him or her before the

magistrate or court issuing the warrant or some other magistrate having cognizance of the case"); Neb. Rev. Stat. § 29-412 (Reissue 1989) (person arrested under warrant shall be presented before "the proper magistrate"). The citation was also, on the face of the certificate of service, not served by certified mail. Therefore, sufficiency of the service of the citation must be evaluated under the standards for service of a civil summons.

A civil summons may be served by personal service, residence service, or certified mail. Neb. Rev. Stat. § 25-505.01 (Reissue 1989). There is nothing in the record to indicate that the citation was served by any of these means. The citation was served by "United States Mail, postage prepaid." Even if one were to assume that this language refers to certified U.S. mail, service by certified mail has not been perfected. Certified mail service, as provided in § 25-505.01(1)(c), requires "(i) within ten days of issuance, sending the summons to the defendant by certified mail with a return receipt requested showing to whom and where delivered and the date of delivery, and (ii) filing with the court proof of service with the signed receipt attached." If we leave aside the question whether the "Certificate of Service" appearing on the face of the citation is itself an adequate proof of service, there was no filing of any return receipt indicating to whom, where, and when the citation was served.

The record discloses that the State failed to prove, by a preponderance of the evidence, that Richter was ever served with the citation requiring his appearance in court on December 23, 1987, or that Richter otherwise had notice of the required court appearance. The period between the filing of the new complaint and the issuance of an arrest warrant was not an excludable period.

The State next argues that the period during which the arrest warrant was outstanding was excludable time. This position, however, ignores the ruling in *State v. Groves, supra*, that the period of time during which a warrant is outstanding is not excludable where the warrant is issued as a result of a defendant's failure to appear, when that failure is a result of lack of notice.

There can be no serious dispute that a defendant is

required to appear at those dates and at those times when ordered *and of which he is notified*. No evidence appears in the record showing the appellant and/or counsel were ever notified to appear. If there was proof available to support the trial court's findings, it was simply not introduced. We can accord no weight to findings which find no support in the evidence.

(Emphasis supplied.) *State v. Beck*, 212 Neb. at 704, 325 N.W.2d at 150-51.

In this case, to allow the statute to be tolled with the mere issuance of a warrant without service would allow the State to schedule hearings without notifying the defendant and then to switch off the speedy trial clock by applying for a warrant.

Some courts have tolled the speedy trial clock where the state shows due diligence in obtaining the defendant's attendance by warrant. See, *Com. v. Ingram*, 404 Pa. Super. 560, 591 A.2d 734 (1991) (pendency of warrant excluded where state had made diligent efforts—checking defendant's last known address, consulting defendant's family, broadcasting "wanted" message on police information network, and patrolling neighborhood defendant known to frequent—to serve warrant on defendant); *Williamson v. State*, 716 S.W.2d 591 (Tex. App. 1986) (time during pendency of warrant excluded where state had made diligent efforts—checking defendant's last known address, checking defendant's place of employment, and consulting defendant's family); *People v. Mouliere*, 118 Misc. 2d 999, 462 N.Y.S.2d 749 (1983) (time during pendency of warrant excluded where state had made diligent efforts—notifying police in Puerto Rico, where defendant reportedly fled; staking out repeatedly defendant's last known address; interviewing defendant's relatives and neighbors; and checking local utilities, the post office, state agencies, and employers).

This is not to say that under certain circumstances warrant pendency time may not be excludable as to an unnotified defendant who has failed to appear if diligent efforts to secure his or her presence by the service of an arrest warrant have been tried and failed. Whether all reasonable means to qualify a search as a reasonably diligent one have been exhausted must be determined by the circumstances of each particular case. *In re*

*Interest of A. W.*, 224 Neb. 764, 401 N.W.2d 477 (1987).

However, in this case, in spite of the fact that the Richter family was well known to local authorities, no inquiries as to defendant's whereabouts were made of either of two brothers who lived in the vicinity. There is no showing in the record where the authorities obtained the 1218 Avenue F address at which service was attempted by *regular* mail on December 11, 1987, and by service of warrant in early 1988. The record does not disclose from what source this address was obtained. The defendant, in his testimony, admitted that this address was his "legitimate" address the first part of December 1987. However, he was never asked during the proceedings relating to the speedy trial issue what his residence address was in January 1988.

The deputy sheriff merely stated that he stopped at this Avenue F address on six different occasions and was unable to find anyone at home. Efforts similar to these evoked the observation of this court in *Emery v. State*, 138 Neb. 776, 777-78, 295 N.W. 417, 418 (1940), "The record shows that the police called at his home and, not finding him in, decided to wait until they should happen to run across him." See *In re Interest of A. W., supra.* No attempt was made to contact the post office regarding Richter's address nor to contact the local utilities or governmental agencies with which Richter would necessarily have contact in day-to-day living.

The State has not shown diligent efforts to secure Richter's appearance by means required by law, and therefore, under the circumstances of this case, there is no evidence to support the finding of the county court that Richter was unavailable for trial, within a reasonable construction of § 29-1207(4)(d), while the warrant remained outstanding.

As the State has failed to bring Richter to trial within 6 months of the filing of the complaint, after excluding time chargeable to Richter, his discharge is mandated by statute. The judgment of the district court is reversed, and the cause is remanded with directions to remand the case to the county court with directions to dismiss it.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.