STATE OF NEBRASKA, APPELLEE, V. TIMOTHY J. CLAUSEN, ALSO KNOWN AS TIMOTHY L. CLAUSEN, ALSO KNOWN AS TIMOTHY CLAUSEN, APPELLANT.

527 N.W.2d 609

Filed January 27, 1995.   No. S-94-299.

Mark A. Weber, of Walentine, O'Toole, McQuillan & Gordon, for appellant.

Timothy J. Clausen, pro se.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

HASTINGS, C.J., WHITE, CAPORALE, LANPHIER, and WRIGHT, JJ., and GRANT, J., Retired, and NORTON, D.J., Retired.

WRIGHT, J.

Timothy J. Clausen appeals his convictions for first degree murder, use of a firearm in the commission of a felony, and possession of a firearm by a felon. A three-judge panel sentenced Clausen to life imprisonment for the murder conviction. He was also sentenced to concurrent terms of 10 to 12 years in prison for the firearm convictions. The sentences for the firearm convictions were ordered to be served consecutively to the life sentence.

## SCOPE OF REVIEW

To sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and thereby obtain reversal of a conviction, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Dawn*, 246 Neb. 384, 519 N.W.2d 249 (1994); *State v. Reichert*, 242 Neb. 33, 492 N.W.2d 874 (1992).

## FACTS

The events which led to the conviction of Clausen for the death of Kenneth Dove began when Clausen and Kenneth Terrell met Dove and Helicia Hickerson outside a bar in Council Bluffs, Iowa, in the early morning hours of December 10, 1992. Clausen, who allegedly believed that Dove was a woman, invited Dove and Hickerson to Terrell's house. On the way to the house, Terrell told Clausen that Dove "looked like a fag."

After drinking and listening to music for a time, Clausen and Dove went into the west bedroom together and locked the door. After about 10 to 15 minutes, they came out and left the house, returning with additional beer and whiskey.

When Clausen and Dove returned, Clausen began flirting with Hickerson. Dove became upset and wanted to leave. Clausen then grabbed Dove by the hand and said that he wanted to talk to Dove, and the two went back into the bedroom. Once in the bedroom, Clausen and Dove engaged in what Clausen described as "safe sex." Clausen stated that he believed Dove was a woman until after they engaged in anal intercourse. When Clausen asked if Dove was a man acting like a woman, Dove said yes.

Clausen said he refused to engage in sexual intercourse a second time and began opening the bedroom door to leave. Clausen stated Dove attacked him with what Clausen originally thought was a razor. Clausen was cut from the temple, across his face, through his lip, and three times on the neck. Clausen testified that he attempted to take a gun away from Dove and that all the shots were fired as he and Dove struggled for control of the gun.

The autopsy revealed three wounds: a grazing bullet wound to the right lateral chest, a grazing bullet wound to the right arm, and an entrance gunshot wound to the top of the head. The pathologist testified that the arm and chest injuries could have been caused by a single bullet which was fired from a muzzle which was more than 8 inches from the wounds. The pathologist also stated that the angle of the bullet which caused the head wound was straight down from the top to the bottom of the skull and that the blood spatter patterns on the wall were consistent

with Dove's having been seated against the wall and "shot from the top of the head."

Terrell's testimony concerning the incident was inconsistent. At the preliminary hearing, Terrell claimed that he heard two gunshots, pushed open the bedroom door, and saw Dove and Clausen struggling over a gun. At trial, Terrell recanted and said he had not entered the bedroom until after the struggle was over. Terrell stated that after Clausen and Dove went into the bedroom, he heard a scuffle, which lasted about 3 minutes, and then heard gunshots. Terrell went to the bedroom and found it locked. When the gunfire stopped, the door was opened from the inside. Terrell observed that Clausen was holding a rag to his face, which was bleeding. Clausen had a gun in his hand, and Dove was slumped against a wall. Terrell checked Dove and found no pulse. On direct examination, Terrell explained the recantation by stating that Julianne Dunn, Clausen's attorney at the preliminary hearing, had asked Terrell if he would lie for Clausen. Terrell told Dunn that he would lie if he had to. He said Dunn told him he might have to lie.

Dunn testified that she had never directed or asked Terrell to lie for Clausen and that just prior to the preliminary hearing, she had talked to Terrell, but he had declined to provide her with details of his discussion with the prosecuting attorney. She said that Terrell told her that he would not say anything which could hurt "TJ," which she interpreted to mean Clausen. The State called Officer Felands Marion, who testified that he had heard Dunn ask Terrell whether he knew what to say and that he saw Terrell nod affirmatively in response to the question before Terrell entered the courtroom.

## ASSIGNMENTS OF ERROR

Clausen makes three assignments of error: (1) The trial court committed plain error in allowing into evidence testimony relating to Dunn's alleged attempts to influence Terrell to testify falsely, without presentation of any evidence tending to show that Clausen governed Dunn's actions; (2) the trial court committed plain error in accepting the jury's verdict, as the circumstantial evidence was insufficient to support a finding of guilt on the charge of first degree murder; and (3) Clausen's

Sixth Amendment rights were violated at trial in that his trial counsel's performance fell below the standard of a lawyer with ordinary training and skill in the defense of a criminal case, but for which there is a reasonable probability that the result of the proceedings would have been different.

## ANALYSIS

We begin by addressing Clausen's first and third assignments of error, which are interrelated. Three attorneys have represented Clausen in this matter: Dunn, who was Clausen's counsel at the preliminary hearing; trial counsel; and counsel on appeal. Clausen asserts on appeal that the trial court erred in allowing Dunn and Terrell to testify regarding Dunn's alleged attempt to influence Terrell's testimony and that trial counsel's failure to object to this testimony resulted in ineffective assistance of counsel, which violated Clausen's Sixth Amendment rights.

Clausen's trial counsel failed to object to the State's examination of Terrell regarding Dunn's alleged attempt to suborn perjury:

Q. And did you tell the truth when you testified at the preliminary hearing?

A. No, I didn't.

Q. You lied about opening the door and seeing a struggle of some kind?

A. Right.

Q. Okay. That didn't happen?

A. No, it didn't.

Q. Between the time this happened and the time that — the preliminary hearing, did you talk to Mr. Clausen at all?

A. Yes, I did. I had talked to him a few times on the phone.

Q. How many times?

A. Maybe five or six.

Q. Okay. When you got to the preliminary hearing, was he represented by another lawyer?

A. Yes, he was.

Q. Were you told by that lawyer it was okay to lie about what happened?

A. She didn't tell me it was okay to lie but she asked me would I lie.

Q. What did you say?

A. I told her if I had to.

Q. What did she say?

A. She said I might have to.

Q. And after that you lied at the preliminary hearing, didn't you?

A. Yes.

Clausen's trial counsel was ineffective because he failed to object to this testimony, and he exacerbated the error when he proceeded to have Terrell repeat the testimony on cross-examination.

Q. You're telling this jury that some lawyer here in town told you that you're going to have to lie on a first degree murder case? Is that what you're telling us?

A. No. She asked me would I lie.

Q. And you said?

A. If I had to.

Q. So she's condoning you getting up and lying at a preliminary hearing, is that what's going on?

A. That's what she told me.

Up to this point in the trial, the State had not established that Clausen had authorized the alleged attempt to have Terrell lie about the struggle or that the alleged effort occurred in the presence of Clausen. However, Clausen's trial counsel proceeded to ask Terrell if Clausen asked Terrell to lie about the struggle between Clausen and Dove.

Q. And do you recall telling Mr. Cooper that you had heard shots and that you saw a struggle take place and that you also saw a weapon?

. . . .

Q. . . . Do you remember saying that?

[Terrell:] Uh-huh.

Q. And now you're telling us today that's a lie?

A. Yes, it is.

Q. That was — you were told to lie?

A. I was told to say that.

Q. Okay. That's by my client?

A. Right.

Q. Okay. And his lawyer?

A. Well, his lawyer didn't say that directly to say that. She just asked me would I lie for him.

We can think of no instance where defense counsel would elicit the fact that the defendant had requested a witness to lie for the defendant at trial. This line of questioning could only result in a prejudicial effect upon the defendant's case.

Clausen correctly asserts that he received ineffective assistance of counsel. The evidence of Dunn's alleged attempt to suborn perjury was highly prejudicial, and trial counsel should have objected to the testimony. In *People v. Weiss*, 50 Cal. 2d 535, 554, 327 P.2d 527, 538 (1958), the court stated:

> "Generally, evidence of the attempt of third persons to suppress testimony is inadmissible against a defendant where the effort did not occur in his presence. . . . However, if the defendant has authorized the attempt of the third person to suppress testimony, evidence of such conduct is admissible against the defendant." . . . If the attempt is made by a third person, not in the presence of a defendant or shown to have been authorized by him, it should at once be suspect as a mere purporting attempt to suppress evidence and in truth an endeavor to prejudice the defendant before the jury in a way which he cannot possibly rebut satisfactorily . . . . The wilful offering of such evidence might well form the basis for declaring a mistrial instanter, or for granting a new trial, or for reversal on appeal . . . .

The State raised the issue of Dunn's alleged attempt to suborn perjury on direct examination of Terrell, and trial counsel did not object. Ordinarily, our rule provides that one who fails to object to or move to strike testimony may not predicate error on its admission. *State v. Campbell*, 239 Neb. 14, 473 N.W.2d 420 (1991). However, plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would cause a miscarriage of justice or damage the integrity, reputation, or fairness of the judicial process. See, *State v. Dawn*, 246 Neb.

384, 519 N.W.2d 249 (1994); *State v. Flye*, 245 Neb. 495, 513 N.W.2d 526 (1994).

We have adopted the two-part test for proving a claim of ineffective assistance of counsel set forth by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and thereby obtain reversal of a conviction, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Dawn, supra*; *State v. Reichert*, 242 Neb. 33, 492 N.W.2d 874 (1992). The defendant must establish that his attorney failed to perform at least as well as a lawyer with ordinary training and experience in criminal law and must demonstrate how he was prejudiced in the defense of the case as a result of the attorney's actions or inactions. *State v. Navrkal*, 242 Neb. 861, 496 N.W.2d 532 (1993).

In *State v. Hawthorne*, 230 Neb. 343, 353, 431 N.W.2d 630, 636 (1988), we stated that the conduct of defense counsel in eliciting testimony from the defendant about a prior felony conviction, which was otherwise inadmissible as evidence, "was performance which fell below a standard of reasonableness required in the defense of a criminal charge, namely, conversance with the rules of evidence." Similarly, Clausen's trial counsel's performance fell below the required standard of reasonableness when trial counsel allowed the State to elicit testimony from Terrell concerning an attempt to suborn perjury. Clausen's defense was tainted when the jury heard allegations that Dunn had attempted to suborn perjury by obtaining false testimony. This prejudice makes it reasonably probable that the result of the trial would have been different. See *State v. Dawn, supra*. As noted in *People v. Weiss*, 50 Cal. 2d 535, 554, 327 P.2d 527, 538 (1958), such evidence is "an endeavor to prejudice the defendant before the jury in a way which he cannot possibly rebut satisfactorily." The reason for exclusion of such testimony is apparent. Evidence of alleged attempts by

a defendant's lawyer to suborn perjury indicate a consciousness of guilt and impermissibly and prejudicially impress upon the jury the idea that the defendant is guilty or the witness would not have to lie for him.

The second element for establishing a claim of ineffective assistance of counsel is that there is a reasonable probability that but for his trial counsel's deficient performance, the result of the proceeding would have been different. See *State v. Dawn, supra*. The record shows that the allegation that Dunn attempted to suborn perjury at the preliminary hearing became a substantial issue in Clausen's trial. The State's attorney commented on the alleged falsification of evidence by Terrell in his closing argument by telling the jury, "What matters is what was in [Terrell's] mind, the witness's mind, and why he lied." Had Terrell's testimony regarding Dunn's alleged attempt to suborn perjury been excluded, the jury would not have been given the opportunity to speculate as to whether Clausen's consciousness of guilt was evidenced by an attempt to suborn perjury. This speculation may have diverted the jury's attention from the real issue of the case—Clausen's guilt or innocence. The cross-examination of Terrell by Clausen's trial counsel only exacerbated the error. The error was further compounded when Clausen's trial counsel elicited Dunn's testimony, which was rebutted when the State called a police officer who overheard a portion of the conversation between Dunn and Terrell at the preliminary hearing.

We find that Clausen has demonstrated there is a reasonable probability that but for his trial counsel's deficient performance, the result of the proceeding would have been different. Therefore, we reverse the judgment and remand the cause for a new trial.

Clausen also assigns as error the trial court's acceptance of the jury verdict, which he claims was based on circumstantial evidence that was insufficient to support a finding of guilty of first degree murder. Because we find that Clausen's Sixth Amendment right to counsel was violated by the ineffective assistance rendered to him, we do not reach this assignment of error.

REVERSED AND REMANDED FOR A NEW TRIAL.