STATE OF NEBRASKA, APPELLEE, V. DAVID J. TURNER, ALSO KNOWN AS DAVID JOSE TURNER, APPELLANT.

564 N.W.2d 231

Filed June 13, 1997.    No. S-96-354.

David A. Domina, Timothy G. Himes, Sr., and Denise E. Frost, of Domina & Copple, P.C., for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

WRIGHT, J.

David J. Turner was convicted of two counts of robbery, one count of first degree forcible sexual assault, and three counts of use of a firearm to commit a felony. Turner appeals his convictions, alleging that his right to a speedy trial was violated and that he received ineffective assistance of counsel.

## I. SCOPE OF REVIEW

To avoid a defendant's absolute discharge from an offense charged, as dictated by Neb. Rev. Stat. § 29-1208 (Reissue 1995), the State must prove by a preponderance of the evidence the existence of a period of time which is authorized by Neb. Rev. Stat. § 29-1207(4) (Reissue 1995) to be excluded in computing the time for commencement of the defendant's trial. *State v. Oldfield*, 236 Neb. 433, 461 N.W.2d 554 (1990).

As a general rule, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. See *State v. Richter*, 240 Neb. 223, 481 N.W.2d 200 (1992).

To sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution and thereby obtain reversal of a defendant's conviction, the defendant must show that (1) counsel's performance was deficient and (2) such defi-

cient performance prejudiced the defendant, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. See *State v. Clausen*, 247 Neb. 309, 527 N.W.2d 609 (1995). See, also, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

## II. FACTS

As a man and his wife were leaving the Nifty Bar and Grill around 1 a.m. on April 14, 1994, they were accosted by two men, one of whom was carrying a rifle. The men were attempting to gain access to the bar, which had a security lock preventing anyone from entering from the outside. After being ordered to get the men access to the bar, the woman knocked on the door, and once the door was open, the two men rushed inside and began ransacking the bar.

The men forced everyone to lie on the floor, began robbing the patrons, and made unsuccessful attempts to open the safe. During the course of the robbery, which lasted approximately 45 minutes, the woman was led to a back room, where the men sexually assaulted her.

An information was filed by the State against Turner on July 15, 1994, charging him with two counts of robbery, one count of first degree forcible sexual assault, and three counts of use of a firearm to commit a felony. Arraignment was scheduled for July 21, but Turner's counsel failed to appear, and arraignment was postponed for 1 week. On July 28, counsel appeared with Turner, and arraignment proceeded. At that time, mutual and reciprocal statutory discovery was ordered.

On September 26, 1994, Turner filed four discovery motions. The first motion was a request that the prosecution turn over all evidentiary samples such as firearms, fingerprints, semen, blood, and other stains so that the defense could make its independent examination of these items. The second requested that the prosecution produce any statements made by Turner and furnish the name of every eyewitness who had identified Turner in a lineup. The third motion was to compel the endorsement of witnesses, and the final motion was for discovery and inspection of documents. The motions were noticed for hearing on October 5, but no hearing was held on that date.

On January 5, 1995, the State moved for a continuance on the grounds that the Federal Bureau of Investigation (FBI) had not completed its DNA analysis of sperm samples taken from the victim. Turner opposed the motion, but the trial court granted the continuance, finding that under § 29-1207(4)(c)(i), there was a legitimate pursuit of evidence which had not yet been obtained through no fault of the prosecution. Trial was set for the March 1995 jury panel.

On February 8, 1995, Turner moved to dismiss for the reason that a trial had not been held as guaranteed by "the Constitution of the United States and the Constitution of the State of Nebraska, Article I, Section 2 within six (6) months pursuant to Section 29-1207 . . . ." Turner also moved to sever his trial from that of his then codefendant, James Coleman. Each motion was accompanied by a notice of hearing on February 14, but the motions were not heard on that date.

On March 3, 1995, Turner made two more motions: (1) a motion for employment of an expert witness for DNA testing at the county's expense and (2) a motion for a private investigator. Each motion was accompanied by a notice stating that Turner intended to call the motions for hearing on March 7. There is no docket entry for that date.

Trial did not begin during the March 1995 jury panel, as previously scheduled, and there are no docket entries for that month. On May 11, 1995, Turner moved for a continuance in order to independently test and analyze the DNA samples. The State responded that it was ready for trial and did not intend to introduce DNA evidence because the test results were inconclusive. Defense counsel, however, insisted on the continuance, arguing that he might make use of the DNA evidence in Turner's defense.

At this hearing, the trial court addressed the motions filed by Turner on September 26, 1994, and February 8 and March 3, 1995. Turner withdrew the March 3 motion to hire a private investigator and the September 26 motion compelling endorsement of witnesses. Regarding the September 26 motion for discovery and inspection of documents, Turner's counsel explained that it had been discussed in chambers previously and that the prosecution had agreed to provide the requested docu-

ments and information at that time. Turner's counsel therefore recommended that the trial court overrule the motion. Turner similarly recommended that the trial court overrule his September 26 motion to produce.

Turner's September 26, 1994, motion for discovery of scientific tests was sustained, but the trial court overruled the February 8, 1995, motion to sever as moot because Coleman had pled guilty and was no longer going to trial. The March 3, 1995, motion for employment of an expert witness was sustained, and Turner's counsel was to name an expert witness that would pursue the DNA issues by May 18. Turner's motion to dismiss was overruled, the trial court reiterating that it found under § 29-1207(4)(c)(i) that the continuance was for a legitimate pursuit of the DNA test results.

The trial court granted Turner's motion for a continuance and set a new trial date for July 17, 1995. On July 11, Turner again moved for a continuance, informing the trial court that the reason for the continuance was that the University of Nebraska Medical Center expert who had been retained to look at the DNA issue would not have results ready for 6 weeks. The State responded that it would forgo its use of the DNA evidence if the case were to be tried in July as previously scheduled. The trial court granted Turner's request, pending the completion of the DNA testing, and reset the trial for a special setting on November 13, 1995.

A September 15, 1995, docket entry recites that by agreement of the parties, the cause was set for trial on September 26. There is, however, no docket entry for that date, and trial began on November 13. The record is silent as to what transpired on or after September 26 until the trial began on November 13.

At trial, Coleman, who had previously pled guilty to charges regarding the robbery and sexual assault at the Nifty Bar and Grill on April 14, 1994, testified that Turner had committed these crimes with him. One of the bar patrons was able to positively identify Turner as one of the men who perpetrated the robbery. The bartender also positively identified Turner.

During the trial, two stipulations were read into the record, with the written versions received into evidence. The first stipulation stated that a DNA comparison between the semen col-

lected from vaginal swabs of the victim and blood samples from Turner was inconclusive. The second stipulation informed the jury that a six-photo array, which contained a photo of Turner, had been displayed to the bartender and the other witness on June 18, 1994, and that neither could make a positive identification from the array.

Turner's alibi was that he was not at the scene of the crime on April 14, 1994, but was with his girl friend and another couple until around 12:30 a.m. His girl friend testified that upon leaving the other couple, she and Turner went home, and that Turner went to sleep while she stayed up watching television until at least 2 a.m.

On November 16, 1995, a jury found Turner guilty of two counts of robbery, one count of first degree forcible sexual assault, and three counts of use of a firearm to commit a felony.

## III. ASSIGNMENTS OF ERROR

Turner makes the following assignments of error: (1) The trial court erred in failing to bring Turner to trial within a reasonable time, in violation of the state and federal Constitutions; (2) the trial court erred in failing to bring Turner to trial within 6 months, in violation of Neb. Rev. Stat. § 29-1205 et seq. (Reissue 1995); (3) the trial court repeatedly erred by continuing the trial date and by failing either to advise Turner of his right to a speedy trial and the effect of his consent to a period of delay or to ascertain on the record whether Turner waived his right to a speedy trial; (4) the trial court erred in granting multiple oral motions for continuance without making specific findings of good cause, or any finding that the continuance was only for so long as necessary or that the new trial date was the earliest available, in violation of § 29-1206 and Neb. Rev. Stat. § 25-1148 (Reissue 1995); and (5) Turner was denied effective assistance of trial counsel.

## IV. ANALYSIS

### 1. STATUTORY RIGHT TO SPEEDY TRIAL

We first address whether Turner's statutory right to a speedy trial under § 29-1207 has been violated. Section 29-1207 requires discharge of a defendant whose case has not been tried

within 6 months after the filing of the information, unless the 6 months are extended by any period to be excluded in computing the time for trial. See, *State v. Lafler*, 225 Neb. 362, 405 N.W.2d 576 (1987); *State v. Williams*, 211 Neb. 650, 319 N.W.2d 748 (1982). The information against Turner was filed on July 15, 1994. Therefore, absent any excluded period of time, the last day for commencement of Turner's trial was January 16, 1995 (January 15 being a Sunday). See *State v. Lafler, supra*. Trial was commenced on November 13, 1995, 301 days beyond the 6-month period. We thus consider whether at least 301 days are properly excluded under § 29-1207 from the speedy trial calculation.

Turner's motion to dismiss on speedy trial grounds was filed on February 8, 1995, and was admittedly directed toward only the State's motion for continuance to allow the FBI to complete its DNA testing. Turner's counsel admits that once the DNA test results were obtained, he was no longer ready for trial.

The February 8, 1995, motion to dismiss was the only time that Turner objected to any delay in his trial. Therefore, the State claims that only the period until February 8 should be considered in the context of Turner's statutory right to a speedy trial. The State relies upon the proposition that an issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal. See *Torrison v. Overman*, 250 Neb. 164, 549 N.W.2d 124 (1996).

During oral argument, the State also raised a question regarding whether this court has jurisdiction of the statutory speedy trial issue, because Turner did not timely appeal from the overruling of his motion for discharge filed on May 11, 1995. The State contends that the denial of a motion for discharge on speedy trial grounds is a final order and, thus, must be appealed within 30 days in order for an appellate court to have jurisdiction. See, e.g., § 29-1208; *State v. Trevino*, 251 Neb. 344, 556 N.W.2d 638 (1996).

We note that in *Lafler*, the defendant's motion for discharge on speedy trial grounds was overruled on April 22, 1986. Trial commenced May 22, and the defendant appealed from his subsequent conviction with a notice of appeal filed August 19. On appeal, we considered the speedy trial issue, even though the

notice of appeal was filed more than 30 days after the motion for discharge was overruled.

Despite the State's arguments, we will assume without deciding that we have jurisdiction in the instant case because Turner has also raised an allegation of ineffective assistance of counsel for failing to raise or properly preserve his rights. We have jurisdiction to consider Turner's constitutional speedy trial claims and his claims of ineffective assistance of counsel, and we will therefore consider all the issues, since they are interrelated.

Considering the period from July 15, 1994, to November 13, 1995, we must determine what, if any, periods of time are properly excluded from the 6-month computation. Section 29-1207(4) states that the following periods shall be excluded in computing the time for trial:

(a) The period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . the time from filing until final disposition of pretrial motions of the defendant, including motions to suppress evidence, motions to quash the indictment or information, demurrers and pleas in abatement and motions for a change of venue; and the time consumed in the trial of other charges against the defendant;

(b) The period of delay resulting from .a continuance granted at the request or with the consent of the defendant or his counsel. A defendant without counsel shall not be deemed to have consented to a continuance unless he has been advised by the court of his right to a speedy trial and the effect of his consent;

(c) The period of delay resulting from a continuance granted at the request of the prosecuting attorney, if:

(i) The continuance is granted because of the unavailability of evidence material to the state's case, when the prosecuting attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at the later date; or

(ii) The continuance is granted to allow the prosecuting attorney additional time to prepare the state's case and additional time is justified because of the exceptional circumstances of the case;

. . . .
(f) Other periods of delay not specifically enumerated herein, but only if the court finds that they are for good cause.

### (a) Turner's Pretrial Motions

Under § 29-1207(4)(a), the time from filing until final disposition of pretrial motions by the defendant is excluded in computing the time for trial. On September 26, 1994, Turner made four motions, which were scheduled to be heard on October 5. On February 8, 1995, Turner made two motions which were scheduled for hearing on February 14. On March 3, Turner made the motions described above for DNA testing and a private investigator, which were accompanied by a notice stating that they would be called up by Turner for hearing on March 7. None of the motions were heard on their allegedly scheduled dates, but were instead all heard on May 11.

Turner argues that only those periods during which the motions were reasonably pending, which he contends is that period between the initial filing and the first scheduled hearing, should be excluded. According to Turner, this would amount to 19 days. He contends that although criminal defendants must accept reasonable delays as a consequence of making pretrial motions, judicial delay, absent a showing of good cause, does not suspend the right to a speedy trial.

In *State v. Wilcox*, 224 Neb. 138, 395 N.W.2d 772 (1986), we held that a defendant was denied his right to a speedy trial where a motion to suppress filed by the defendant was not heard until 1 year 7 months 24 days after it was filed. The motion was set for hearing a little over 1 month after it was filed. However, the motion was not heard at that time because the judge recused himself. Thereafter, the record indicated no action in the case for 1 year 4 months 26 days, until finally the substituted judge received the transcript and 16 days later ruled on the motion. We concluded that the defendant's rights under § 29-1207 had been violated. In addressing the time period after the substituted judge had been assigned to the case, we stated that a court cannot table a motion and thereby suspend the defendant's rights where judicial delay without a showing of good cause under § 29-1207(4)(f) would otherwise warrant discharge.

In *State v. Lafler*, 225 Neb. 362, 405 N.W.2d 576 (1987), we clarified *Wilcox* by pointing out that where the excludable period properly falls under § 29-1207(4)(a) rather than the catchall provision of § 29-1207(4)(f), no showing of reasonableness or good cause is necessary to exclude the delay. In *Lafler*, the information was filed on September 16, 1985, and a plea in abatement was filed on September 24. On October 8, Lafler's attorney appeared regarding the plea and offered an exhibit. No further docket entries appeared until January 21, 1986, when the court, on its own motion, set arguments for February 4 and then overruled the plea on February 11. The time from the filing of the plea to the court's ruling was 141 days.

Lafler claimed that he was responsible for only the period from the filing of the plea to its first hearing and the period during which the court actually had the plea under advisement. He argued that the remaining time should be charged to the State on account of inordinate and unreasonable judicial delay. In rejecting that proposition, we distinguished *Wilcox* because the delay in *Wilcox* was not based on one of the specifically enumerated or described periods of delay which are excluded under § 29-1207(4)(a). Instead, *Wilcox* involved consideration of whether the delay fell under § 29-1207(4)(f), wherein other periods of delay not specifically enumerated are excludable, "but only if the court finds that they are for good cause."

We pointed out in *Lafler* that, unlike the requirement in § 29-1207(4)(f) that any delay be for "good cause," conspicuously absent from § 29-1207(4)(a) is any limitation, restriction, or qualification of the time which may be charged to the defendant as a result of the defendant's motions. Rather, the plain terms of § 29-1207(4)(a) exclude all time between the time of the filing of the defendant's pretrial motions and their final disposition, regardless of the promptness or reasonableness of the delay. We noted that in this respect, § 29-1207(4)(a) was similar to a provision in the federal Speedy Trial Act of 1974, 18 U.S.C. § 3161 et seq. (1982), and that the U.S. Supreme Court in *Henderson v. United States*, 476 U.S. 321, 106 S. Ct. 1871, 90 L. Ed. 2d 299 (1986), considered this provision and stated that the plain terms of the act excluded all time between the filing of and the hearing on a motion whether or not the hearing

had been promptly held. Thus, the Court concluded that the period of delay was not required to be reasonable.

We noted that the Nebraska Legislature could have drafted the statute so as to apply a "reasonable time" requirement to the situation described in § 29-1207(4)(a), but that it did not. We likewise declined to do so. We held that

> any delay caused by the defendant's act or conduct, namely, those pretrial situations or matters described or characterized in § 29-1207(4)(a), is automatically excluded in computing the time when the defendant's trial must commence pursuant to the Nebraska speedy trial act. Any period of delay resulting from a defendant's act or conduct specifically mentioned in reference to the pretrial matters or situations described or characterized in § 29-1207(4)(a) is computed without consideration whether such delay was reasonably necessary. However, a period of delay resulting from other than the defendant's act or conduct described or characterized in § 29-1207(4)(a) may be excluded in computing the time for commencement of a defendant's trial, if such delay occurred on account of "good cause," as provided in § 29-1207(4)(f).

*State v. Lafler*, 225 Neb. 362, 373, 405 N.W.2d 576, 584 (1987).

In the case at bar, the evidence does not establish that the delay in hearing Turner's motions was attributable to judicial neglect. To the contrary, the hearing on May 11, 1995, indicates that the reason for the delay was Turner's counsel's failure to adequately pursue the motions. It is not the State's or the court's burden to pursue the defendant's motions. Such motions are the primary responsibility of the party that brings them, and it will be presumed that a delay in hearing defense pretrial motions is attributable to the defendant unless the record affirmatively indicates otherwise. The record does not establish Turner's reasons for not pursuing the motions sooner. If Turner had decided not to pursue the motions, they could have been withdrawn and the trial court contacted so the case could have proceeded. Turner cannot take advantage of the delay in being brought to trial where by his own inactions he is responsible for the delay.

See *State v. Brown*, 214 Neb. 665, 335 N.W.2d 542 (1983) (under § 29-1207(4)(a), entire period of time in which portion of defendant's pretrial motion for discovery lay dormant was properly chargeable against defendant). " 'An accused cannot generally take advantage of a delay in being brought to trial, where he is responsible for the delay either by action or inaction.' " *Lafler*, 225 Neb. at 370, 405 N.W.2d at 582, quoting *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985).

Accordingly, we find that the entire period from the filing of Turner's first motions on September 26, 1994, to their final disposition on May 11, 1995, is properly excluded under § 29-1207(4)(a). This is a total of 227 days.

(b) State's Motion for Continuance

While Turner's pretrial motions were pending, on January 5, 1995, the State moved for continuance on the grounds that the DNA analysis of sperm samples taken from the victim had not been completed. Turner opposed the motion, wanting to go to trial without any DNA test results. The trial court, however, granted the continuance and specifically found that there was a legitimate pursuit of evidence and that the delay in obtaining it was through no fault of the prosecution.

Section 29-1207(4)(c)(i) provides that the period of delay resulting from a continuance granted at the request of the prosecuting attorney is excluded in computing the time for trial if the continuance is granted because of the unavailability of evidence material to the State's case, when the prosecuting attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date. Turner concedes that this period attributable to the State's continuance is properly excluded, and we agree. The court rescheduled the trial for March 20, 1995. Therefore, there are 74 days that are excluded from the 6-month period because of the State's continuance. However, the State's continuance occurred during the time that Turner's pretrial motions were still pending. Thus, the 74 days are already included in the 227 days excluded due to Turner's pretrial motions.

### (c) Turner's Motions for Continuance

On May 11, 1995, Turner's counsel requested a continuance to conduct an independent analysis of the DNA samples. Subsequently, on July 11, Turner moved for another continuance, indicating that he was not ready for trial because the DNA analysis was not complete. Accordingly, the trial court reset the trial for a special setting on November 13, at which time the trial did in fact commence. Section 29-1207(4)(b) provides that a period of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel is excluded from the speedy trial calculation. Turner agrees that his motions for continuance should be excluded under this provision. However, pointing to a docket entry which scheduled the trial for September 26, Turner argues that only the period up to September 26 should be excluded. We disagree.

At the time of the second continuance, Turner's counsel agreed to reset the trial for a special setting on November 13, 1995, and this date was a result of Turner's motion for continuance. Therefore, the entire period from the date of the first motion for continuance (May 11) until the time of trial (November 13) is properly excluded. This totals 186 days.

### (d) Determination

Trial commenced November 13, 1995, which was 301 days beyond the 6-month period. The delays excluded due to Turner's motions amount to 413 days and are excluded from the 6-month calculation. We therefore find that Turner's statutory right to a speedy trial has not been violated.

### 2. CONSTITUTIONAL RIGHT TO SPEEDY TRIAL

The constitutional right to a speedy trial is found in U.S. Const. amend. VI and Neb. Const. art. I, § 11. The constitutional right to a speedy trial and the statutory implementation of that right exist independently of each other. *State v. Trammell*, 240 Neb. 724, 484 N.W.2d 263 (1992). Determining whether a defendant's constitutional right to a speedy trial has been violated requires a balancing test in which the courts must approach each case on an ad hoc basis. This balancing test involves four factors: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) preju-

dice to the defendant. *Id.* None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. Rather, the factors are related and must be considered together with other circumstances as may be relevant. *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989).

Since we have previously found that the delay in bringing Turner to trial was a result of either a good faith pursuit of DNA test results by the State or delays attributed to Turner, it cannot be said that Turner's constitutional right to a speedy trial has been violated. Therefore, we find this assignment of error to be without merit.

### 3. FAILURE TO WAIVE RIGHT TO SPEEDY TRIAL

Turner generally argues that the trial court erred by continuing the trial date, failing to advise Turner of his right to a speedy trial, and failing to ascertain on the record whether Turner waived his right to a speedy trial. We find this argument to be without merit. Having already determined that Turner was not denied his right to a speedy trial, we conclude that there was nothing for Turner to waive and that it was not error for the trial court to fail to advise Turner of his right and ascertain on the record whether Turner had waived it. Turner made numerous pretrial motions within the 6-month period, which extended the trial date.

### 4. SPECIFIC FINDINGS OF GOOD CAUSE

Turner claims that the trial court committed reversible error by granting motions for continuance in violation of §§ 29-1206 and 25-1148. Section 29-1206 states:

> Applications for continuances shall be made in accordance with section 25-1148, but in criminal cases in the district court the court shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecution or defense, but also the public interest in prompt disposition of the case.

Section 25-1148 sets forth the procedure to be followed when one applies for a continuance, which includes a requirement that the application be in writing and supported by an affidavit.

Turner argues that the trial court erred because it failed to make any specific findings of good cause or any finding that the continuances were only for so long as necessary. In addition, Turner alleges that the trial court granted at least three oral continuances which are not evidenced by the record. We address only those continuances that are evidenced by the record: two continuances granted at the request of Turner's counsel and one continuance granted at the request of the prosecution.

We note that §§ 29-1206 and 25-1148 do not define whether a defendant's right to a speedy trial has been violated. Rather, they guide the court and the parties in the proper standard and procedure for continuances in light of not only the parties' interests but also the public interest in a reasonably prompt disposition of the case. A motion for continuance is addressed to the discretion of the court, and in the absence of a showing of an abuse of discretion, a ruling on a motion for continuance will not be disturbed on appeal. *Korte v. Betzer*, 193 Neb. 15, 225 N.W.2d 30 (1975).

With regard to Turner's motions for continuance, we hold that where continuances are granted at the request of the defendant, the defendant cannot later complain that the court violated §§ 29-1206 and 25-1148 in granting his or her request. With regard to the continuance granted at the request of the prosecution, we reiterate that the trial court specifically found that the continuance was justified under § 29-1207(4)(c)(i). Such a finding inherently includes a showing of good cause, and we note that the trial court properly rescheduled the trial in accordance with the expected date of the arrival of the DNA test results.

As previously discussed, the period attributable to this continuance was properly excluded from the speedy trial calculation, and we can find no basis to conclude that the trial court abused its discretion in granting the continuance. Accordingly, we find Turner's argument that the trial court erred in granting motions for continuance in violation of §§ 29-1206 and 25-1148 to be without merit.

### 5. Effective Assistance of Counsel

Turner argues that he was denied effective assistance of counsel. To sustain a claim of ineffective assistance of counsel

as a violation of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution and thereby obtain reversal of a defendant's conviction, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. See *State v. Clausen*, 247 Neb. 309, 527 N.W.2d 609 (1995). See, also, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Turner alleges that his trial counsel was ineffective by failing to insist that all hearings be conducted on the record, by failing to insist on compliance with the procedures mandated by § 29-1205 et seq., and by failing to renew the speedy trial dismissal motion. Turner also asserts that trial counsel was ineffective by failing to affirmatively advise Turner of his right to a speedy trial and the consequences of waiving that right and by failing to insist that the trial court apprise Turner of that right and obtain a knowing, voluntary waiver of it on the record. We have previously held that Turner's right to a speedy trial was not infringed. Therefore, these arguments are without merit.

Turner also argues that trial counsel was ineffective for stipulating to the evidence regarding the DNA testing. The parties stipulated to the effect that the results of the comparison were inconclusive, but the laboratory could not exclude Turner as the source of the semen. Turner argues that the introduction of such evidence via the stipulation deprived him of the opportunity to vigorously cross-examine the State's expert witness regarding DNA tests, protocol, and the expert's conclusion, and deprived the jury of guidance regarding the weight merited by the DNA evidence. Turner has failed to show that trial counsel was ineffective or that he was prejudiced in this regard. Turner's counsel could reasonably have believed that the fact that the DNA evidence was inconclusive was a fact favorable to Turner's case, which fact trial counsel may have wanted presented to the jury.

Finally, Turner alleges that his trial counsel was ineffective in failing to appear to counsel him at an identification lineup following his arrest and in failing to appear at his first scheduled arraignment.

The identification lineup was conducted prior to the filing of an information against Turner. Turner acknowledges that a suspect in an identification lineup does not have a per se right to counsel until after adversary proceedings have been attached through the filing of an information or indictment. See *State v. Sanders*, 235 Neb. 183, 455 N.W.2d 108 (1990). Still, Turner claims that counsel's absence was significant and disabling because no other witness positively identified him in the photo array and that the witness' identification was arguably tainted by improper suggestiveness. Upon our review of the record, we find no showing of prejudice in this regard.

With regard to the failure of Turner's counsel to appear at the first scheduled arraignment, we conclude that this failure to appear was inconsequential because the arraignment was properly rescheduled. The delay due to the need to reschedule the arraignment was not charged against Turner in our speedy trial analysis.

Turner has failed to show that his constitutional right to effective assistance of counsel has been violated.

### 6. ARGUMENTS NOT ASSIGNED AS ERROR

Turner argues that the trial court committed prejudicial reversible error by excluding him from the multiple hearings conducted by the court on the motions for continuance. This issue has not been assigned as error, and we do not address it. Turner further argues that trial counsel was ineffective by participating in off-the-record hearings outside Turner's presence. This issue was also not assigned as error, and therefore, we do not address it.

### V. CONCLUSION

The judgment of the district court is affirmed.

AFFIRMED.