STATE OF NEBRASKA, APPELLEE, V.
ERICK FERNANDO VELA, APPELLANT.

721 N.W.2d 631

Filed September 8, 2006.    No. S-06-595.

James R. Mowbray and Jeffery A. Pickens, of Nebraska Commission on Public Advocacy, and Mark Albin for appellant.

Jon Bruning, Attorney General, and J. Kirk Brown for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

The defendant, Erick Fernando Vela, took the above-captioned appeal from an order of the Madison County District Court overruling his "Amended Verified Motion to Preclude Imposition of Death Sentence Because of Mental Retardation." On our own motion, we entered an order to show cause, by simultaneous briefing, why the appeal should not be dismissed for lack of jurisdiction pursuant to Neb. Ct. R. of Prac. 7A(2) (rev. 2001). Those briefs have now been filed, and for the reasons stated

below, we conclude that the court's order was not a final, appealable order and dismiss the appeal.

The defendant was charged by information in the district court with five counts of murder in the first degree and five counts of use of a deadly weapon to commit a felony. The information also contained the notice of aggravation necessary for the prosecution to seek the death penalty. See Neb. Rev. Stat. § 29-1603 (Cum. Supp. 2004). The defendant had previously been charged by information with one count of robbery, one count of burglary, and another count of use of a deadly weapon to commit a felony. Pursuant to guilty pleas, the defendant was convicted of all 13 charges against him. A jury trial was had on aggravating circumstances, and the jury found that all the alleged aggravating circumstances were proved beyond a reasonable doubt for each of the five murders.

Neb. Rev. Stat. § 28-105.01 (Cum. Supp. 2004) provides, in relevant part:

(2) Notwithstanding any other provision of law, the death penalty shall not be imposed upon any person with mental retardation.

(3) As used in subsection (2) of this section, mental retardation means significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior. An intelligence quotient of seventy or below on a reliably administered intelligence quotient test shall be presumptive evidence of mental retardation.

(4) If (a) a jury renders a verdict finding the existence of one or more aggravating circumstances . . . the court shall hold a hearing prior to any sentencing determination proceeding . . . upon a verified motion of the defense requesting a ruling that the penalty of death be precluded under subsection (2) of this section. If the court finds, by a preponderance of the evidence, that the defendant is a person with mental retardation, the death sentence shall not be imposed. A ruling by the court that the evidence of diminished intelligence introduced by the defendant does not preclude the death penalty under subsection (2) of this section shall not restrict the defendant's opportunity to introduce such evidence at the sentencing determination proceeding

. . . . or to argue that such evidence should be given mitigating significance.

The defendant filed a verified motion to preclude imposition of the death sentence because of mental retardation. See, § 28-105.01(2); *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002) (execution of mentally retarded criminal is cruel and unusual punishment prohibited by Eighth Amendment). An evidentiary hearing was held, and the district court found that the defendant had not proved that he was mentally retarded within the meaning of § 28-105.01(3) or *Atkins, supra*. The district court overruled the defendant's motion to preclude imposition of the death sentence, and the defendant filed a notice of appeal.

It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *State v. Ehlers*, 262 Neb. 247, 631 N.W.2d 471 (2001). For an appellate court to acquire jurisdiction of an appeal, there must be a final judgment or final order entered by the tribunal from which the appeal is taken. See *In re Guardianship of Sophia M.*, 271 Neb. 133, 710 N.W.2d 312 (2006).

A judgment entered during the pendency of a criminal cause is final only when no further action is required to completely dispose of the cause pending. *State v. Dunlap*, 271 Neb. 314, 710 N.W.2d 873 (2006). In a criminal case, the judgment is the sentence. *State v. Campbell*, 247 Neb. 517, 527 N.W.2d 868 (1995). The trial court must pronounce sentence before a criminal conviction is a final judgment. See *State v. Beyer*, 260 Neb. 670, 619 N.W.2d 213 (2000). It is apparent from the record in this case that the defendant has not been sentenced. Consequently, this court's jurisdiction, if any, is premised on the existence of a final, appealable order.

The three types of final orders which may be reviewed on appeal under the provisions of Neb. Rev. Stat. § 25-1902 (Reissue 1995) are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered. *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860

(2005). Because the order from which the defendant is attempting to appeal in this case neither in effect determined the action and prevented a judgment nor was made on summary application after a judgment was rendered, the issue is whether the order appealed from both affected a substantial right and was made during a special proceeding.

We first address whether the order affected a substantial right. A substantial right is an essential legal right, not a mere technical right. *In re Guardianship of Sophia M., supra.* A substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant prior to the order from which an appeal is taken. *Id.*

In criminal proceedings, orders affecting substantial rights include the denial of a motion to discharge based upon speedy trial grounds, and the denial of a plea in bar made on double jeopardy grounds. See, *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997) (speedy trial); *State v. Sinsel*, 249 Neb. 369, 543 N.W.2d 457 (1996) (double jeopardy). But rulings on several other comparable motions in criminal cases are not final, appealable orders, because they do not affect a substantial right. See, e.g., *Loyd, supra* (overruling of motion based on statute of limitations); *State v. Sklenar*, 269 Neb. 98, 690 N.W.2d 631 (2005) (denial of motion to discharge violation of probation); *State v. Lauck*, 261 Neb. 145, 621 N.W.2d 515 (2001) (overruling of plea in abatement claiming that alleged facts did not constitute crime); *State v. Pruett*, 258 Neb. 797, 606 N.W.2d 781 (2000) (overruling of motion to quash claiming that alleged facts did not constitute crime); *State v. Meese*, 257 Neb. 486, 599 N.W.2d 192 (1999) (overruling of plea in abatement claiming violation of due process because of preindictment delay); *State v. Cisneros*, 14 Neb. App. 112, 704 N.W.2d 550 (2005) (overruling of motion to withdraw no contest pleas).

The distinction among these cases is in the nature of the allegedly substantial right at issue. A substantial right can be affected by an order if the right is irrevocably lost by operation of the order, while a substantial right is not affected when that right can be effectively vindicated in an appeal from the final judgment. In *Jacques*, for instance, we explained that the denial

of a motion to discharge made on speedy trial grounds affected the subject matter of the litigation because denial of such a motion effectively denied a defendant's speedy trial rights. *Id.*, citing *State v. Gibbs*, 253 Neb. 241, 570 N.W.2d 326 (1997). Similarly, if a criminal defendant is to avoid exposure to double jeopardy, his or her double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs. *Sinsel, supra*, citing *State v. Milenkovich*, 236 Neb. 42, 458 N.W.2d 747 (1990).

But in *Lauck, supra*, we held that a substantial right of the defendant had not been affected, because the defendant could still present all the defenses that he could have presented before the overruling of his plea in abatement. He could still argue that he was not guilty of the crime charged, make a motion to dismiss, or present affirmative defenses, and if convicted, he could raise on direct appeal the issue initially presented by his plea in abatement. See *id.* See, also, *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860 (2005). Similarly, in *Meese, supra*, we explained that whether a substantial right was affected depended on whether the defendant's right to a fair trial could be vindicated in an appeal from the final judgment, or whether the right could be protected only if the defendant was allowed to appeal directly from the denial of her pretrial motion. See, also, *Pruett, supra*; *Cisneros, supra*.

The right at issue in the instant case is both statutory and constitutional. See, § 28-105.01(2); *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002). However, both the statutory mandate and constitutional rule are based on the determination that "mentally retarded persons who meet the law's requirements for criminal responsibility should be tried and punished when they commit crimes," but "[b]ecause of their disabilities in areas of reasoning, judgment, and control of their impulses . . . they do not act with the level of moral culpability that characterizes the most serious adult criminal conduct." *Atkins*, 526 U.S. at 306. See, also, Introducer's Statement of Intent, L.B. 1266, Judiciary Committee, 95th Leg., 2d Sess. (Feb. 13, 1998). As the introducing senator explained on the floor of the Legislature, in introducing the bill that would become § 28-105.01(2),

clearly we already prohibit the death penalty for persons under the age of 18. That's currently the law. One of the thoughts is at that youthful age the maturity makes it difficult to have the judgment to know fully what you're doing. Is it any more difficult for that situation than it is for an individual who has an IQ below 70, thus being mentally retarded? And the feeling is obviously not. The mental capacity as individuals makes it very difficult for them to understand the rightness and wrongness of what they do, the consequences of their actions. It is already a mitigating circumstance that can be used in the sentencing process. But the thought tha[t] somebody who is mentally retarded with that sort of limitation of the mental capacity should be subject to the most severe punishment, that being the death penalty, is something that is objectionable to those of us who support this measure.

Floor Debate, 95th Leg., 2d Sess. 15769 (Apr. 6, 1998).

Section 28-105.01(2) and the Eighth Amendment prohibit the execution of mentally retarded persons because of what the U.S. Supreme Court describes as a "widespread judgment about the relative culpability of mentally retarded offenders, and the relationship between mental retardation and the penological purposes served by the death penalty." *Atkins*, 536 U.S. at 317. The purpose of the statutory and constitutional prohibition is to ensure that "the offender gets his 'just deserts' " and that the punishment imposed is commensurate with the culpability of the offender. 536 U.S. at 319. In other words, the right protected by § 28-105.01 and the Eighth Amendment is the right not to be *executed*—rather than the right not to be *sentenced*—where the culpability of the defendant is insufficient to justify the death penalty. Stated more simply, it is the right not to be subjected to punishment that is excessive when compared to the defendant's culpability.

This right is not lost by virtue of proceeding to final judgment prior to appellate review, and can be effectively vindicated in an appeal after judgment. Appellate review of the court's finding pursuant to § 28-105.01(4) is not foreclosed, and any prejudice resulting from an erroneous ruling can be mitigated by a timely appeal after sentencing. See, *State v. Lauck*, 261 Neb.

145, 621 N.W.2d 515 (2001); *State v. Pruett,* 258 Neb. 797, 606 N.W.2d 781 (2000); *State v. Meese,* 257 Neb. 486, 599 N.W.2d 192 (1999); *State v. Cisneros,* 14 Neb. App. 112, 704 N.W.2d 550 (2005).

Furthermore, impairment of the capacity of the defendant to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of law, as a result of mental defect, remains a statutory mitigating circumstance in a capital sentencing proceeding. Neb. Rev. Stat. § 29-2523(2)(g) (Cum. Supp. 2004). A ruling by the court that the death penalty is not precluded by § 28-105.01(2) does not restrict the defendant's opportunity to introduce evidence of diminished intelligence as it is relevant to § 29-2523(2)(g). See § 28-105.01(4). Thus, the defendant can still defend himself by presenting evidence that his culpability is mitigated by his mental capacity. Compare, *State v. Loyd,* 269 Neb. 762, 696 N.W.2d 860 (2005); *Lauck, supra.*

In short, the order overruling the defendant's motion to preclude imposition of a death sentence does not diminish a claim or defense available to the defendant at the sentencing hearing, and any prejudice resulting from the erroneous imposition of a death sentence can be protected in an appeal from final judgment. Thus, the court's order overruling the defendant's motion did not affect a substantial right.

Furthermore, the hearing on mental retardation provided by § 28-105.01(4) is not a special proceeding. Where the law confers a right and authorizes a special application to a court to enforce the right, the proceeding is special, within the ordinary meaning of the term "special proceeding." *Loyd, supra.* A special proceeding is, by definition, not part of an action. *Id.* An action involves prosecuting the alleged rights between the parties and ends in a final judgment, whereas a special proceeding does not. *Id.* A hearing on mental retardation pursuant to § 28-105.01(4) is a part of the action, not a special proceeding.

Special proceedings, in criminal cases, include motions to discharge made on speedy trial grounds and pleas in bar made on double jeopardy grounds. See, *State v. Jacques,* 253 Neb. 247, 570 N.W.2d 331 (1997); *State v. Milenkovich,* 236 Neb. 42, 458 N.W.2d 747 (1990). A proceeding may be special, even if

the proceeding is connected with a pending action. *Jacques, supra.* An application to enforce the constitutional right to avoid double jeopardy, for instance, is a special proceeding because it "is not made as a step in determining the merits of any issue in the criminal prosecution itself." *Milenkovich,* 236 Neb. at 48, 458 N.W.2d at 751. Similarly, a motion to discharge on speedy trial grounds is a special proceeding because it does not prosecute alleged rights between parties or end in final judgment. *Jacques, supra.* " ' "[I]t is not an integral part of or a step in the action[,] or as it is sometimes referred to in such a situation[,] part of the 'main case.' " ' " *Id.* at 254, 570 N.W.2d at 336. " ' "None of the many steps or proceedings necessary or permitted to be taken in an action to commence it, to join issues in it, and conduct it to a final hearing and judgment can be a special proceeding within the terms of the statute." ' " *Id.* at 253-54, 570 N.W.2d at 336.

But a § 28-105.01(4) hearing on mental retardation, while expressly provided by statute, takes place in the context of a specialized sentencing proceeding for capital cases, the purpose of which is to guide the sentencing panel in the rational imposition of the death sentence. See Neb. Rev. Stat. § 29-2519(1) (Cum. Supp. 2004). As previously noted, in a criminal case, the judgment is the sentence. *State v. Campbell,* 247 Neb. 517, 527 N.W.2d 868 (1995). The hearing provided by § 28-105.01(4) is simply one step in the process of determining whether the death sentence should be imposed. Generally, when imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Vasquez,* 271 Neb. 906, 716 N.W.2d 443 (2006). As explained above, mentality is particularly pertinent in capital sentencing because of the categorical determination that mental retardation mitigates the defendant's culpability. See *Atkins v. Virginia,* 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002).

Thus, the issue of mental retardation is necessarily part of the merits of the sentencing proceeding. As such, a hearing pursuant

to § 28-105.01(4) is part of the process used to decide the merits of the action and determine the judgment that should be imposed. In short, a motion pursuant to § 28-105.01(4) addresses moral culpability, and thus the merits of the State's case against the defendant; a hearing and order overruling such a motion is part of the action, not a special proceeding. See *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860 (2005).

Because it neither affected a substantial right nor was made in a special proceeding, the court's order overruling the defendant's motion to preclude imposition of the death sentence because of mental retardation was not a final, appealable order. For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the tribunal from which the appeal is taken. *In re Guardianship of Sophia M.*, 271 Neb. 133, 710 N.W.2d 312 (2006). When an appellate court is without jurisdiction to act, the appeal must be dismissed. *State v. Dunlap*, 271 Neb. 314, 710 N.W.2d 873 (2006).

The court, on its own motion, hereby dismisses the above-captioned appeal. See rule 7A(2).

APPEAL DISMISSED.