STATE OF NEBRASKA, APPELLEE, V. ALLEN J. WILSON,
ALSO KNOWN AS ALFRED J. WILLIAMS, APPELLANT.
724 N.W.2d 99

Filed November 21, 2006. No. A-06-154.

Michael J. Decker, of Decker Law Offices, for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

INBODY, Chief Judge, and MOORE and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Prior to trial, the district court for Douglas County denied the motion of Allen J. Wilson, also known as Alfred J. Williams,

seeking discharge based upon an alleged violation of his statutory and constitutional rights to a speedy trial. After being convicted by a jury but prior to sentencing, Wilson filed this appeal from the court's order overruling his motion for discharge, alleging only that he was denied his constitutional right to a speedy trial. Because we conclude that Wilson's appeal was interlocutory, we dismiss the appeal for lack of jurisdiction.

## BACKGROUND

On February 12, 1999, the affidavit of an Omaha police officer set forth grounds for issuance of an arrest warrant for Wilson. According to the affidavit, a man identified as James E. Williams and an accomplice forced their way into Thomas Johnson's residence on February 3, 1998, and robbed Johnson and Tanyel Smith. Williams was later arrested and incarcerated for the crimes. A police officer interviewed Williams on February 3, 1999, at which time Williams identified his accomplice as his uncle, "Alfred Williams" (Wilson). According to Williams, Wilson had been arrested in California, transferred to Nebraska, and paroled out of the Lincoln Correctional Center. The affiant spoke with the supervisor of discharged inmate records at the Department of Correctional Services in Lincoln, asking the supervisor to check on an "Alfred Williams" who would have been released in 1997 or 1998 on a charge from California. The supervisor found a party matching the description under the name "Allen J. Wilson" and sent the affiant a release photograph of Wilson. The affiant showed the photograph to Williams, and Williams stated that the photograph depicted his uncle, "Alfred Williams," who had assisted Williams in the 1998 robbery. On February 12, 1999, the county court for Douglas County issued a warrant for Wilson's arrest, and the State filed in the county court four one-count complaints based on the above-described acts. The complaints charged Wilson with two counts of robbery and two counts of use of a deadly weapon to commit a felony.

On June 9, 2005, Wilson made his first appearance in county court. On July 15, the county court held a preliminary hearing, and the matter was bound over to the district court. On July 19, the State filed an information charging Wilson with two counts of robbery and two counts of use of a deadly weapon to commit a felony, all counts arising out of acts committed on February 3,

1998, against Johnson and Smith. On December 30, 2005, the State filed an amended information charging Wilson with two counts of robbery, six counts of use of a deadly weapon to commit a felony, and four counts of false imprisonment in the first degree, as well as with being a habitual criminal. Pursuant to Wilson's motion to quash, the court subsequently struck from the amended information two counts of false imprisonment in the first degree and four counts of use of a deadly weapon to commit a felony.

On January 20, 2006, Wilson filed a motion for discharge. The motion alleged that the failure to prosecute the matter within 6 months of filing the original action in the county court and within 6 months of the filing of the information denied him his statutory right to a speedy trial and that the failure to prosecute the matter for 7 years denied him his federal and state constitutional rights to a speedy trial.

During the hearing on Wilson's motion for discharge, the court inquired whether there was any information regarding Wilson's whereabouts post-February 3, 1998. The State responded that at the time the warrant was drafted, the State had information indicating Wilson might have left for California, that officers checked with "the jurisdiction in California" but were unable to locate Wilson, and that on June 7, 2005, Wilson was arrested in Omaha on unrelated charges. Wilson's counsel conceded that the statutory speedy trial time had not run, based on the time the information was filed in district court.

With respect to the constitutional speedy trial right, Wilson's counsel argued that Wilson's defense would suffer prejudice by the delay, because "if and when alibi witnesses are called, we believe the State is going to attack the witnesses's credibility based on the length of time it's been since the incident occurred and remembering back as far as when . . . Williams was in California, et cetera." The State asserted that the officers performed a diligent search for Wilson, that the warrant remained active until Wilson was arrested in the Douglas County area, and that the time for a speedy trial did not begin to run until the information was filed on July 19, 2005.

The court ruled that the statutory speedy trial right had not been violated and that Wilson had not been prejudiced by the

delay. In an order filed January 25, 2006, the court overruled the motion for discharge. However, Wilson did not perfect an appeal before a jury trial commenced. An order filed February 2 stated that a jury unanimously found Wilson guilty of two counts of robbery, two counts of use of a deadly weapon to commit a felony, and two counts of false imprisonment in the first degree. The court adjudged Wilson guilty pursuant to the jury's verdict and, prior to sentencing, scheduled a hearing on whether Wilson should be determined to be a habitual criminal. On February 6, after the trial and before sentencing, Wilson filed his notice of appeal and poverty affidavit.

## ASSIGNMENT OF ERROR

Wilson alleges, restated, that the district court was clearly wrong in finding that he was not denied his constitutional right to a speedy trial.

## STANDARD OF REVIEW

■ A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Hallie Mgmt. Co. v. Perry*, 272 Neb. 81, 718 N.W.2d 531 (2006).

## ANALYSIS

■ It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *State v. Vela*, 272 Neb. 287, 721 N.W.2d 631 (2006). For an appellate court to acquire jurisdiction of an appeal, there must be a final judgment or final order entered by the tribunal from which the appeal is taken. *Id.*

■ A judgment entered during the pendency of a criminal cause is final only when no further action is required to completely dispose of the cause pending. *Id.* In a criminal case, the judgment is the sentence. *Id.* The trial court must pronounce sentence before a criminal conviction is a final judgment. *Id.* In this case, a final judgment has not been entered, because Wilson filed his notice of appeal after being convicted but prior to sentencing. If an order is interlocutory, immediate appeal from the order is disallowed so that courts may avoid piecemeal review, chaos in trial procedure, and a succession of appeals granted

in the same case to secure advisory opinions to govern further actions of the trial court. *State v. Meese*, 257 Neb. 486, 599 N.W.2d 192 (1999); *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997).

■ Jurisdiction in this court depends on whether Wilson's appeal—filed within 30 days of the entry of the order denying his motion for discharge—was taken from a final order. The three types of final orders which may be reviewed on appeal under the provisions of Neb. Rev. Stat. § 25-1902 (Reissue 1995) are (1) an order which affects a substantial right in an action and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered. See, *State v. Meese, supra*; *State v. Jacques, supra*. The order denying Wilson's motion for discharge did not determine the action and prevent a judgment, nor was it made on summary application after a judgment was rendered. We examine whether the order was made during a special proceeding and affected a substantial right.

■ Wilson claimed in his motion for discharge that he had been denied his statutory and constitutional rights to a speedy trial, and the district court overruled the motion. The Nebraska Supreme Court has held that the denial of a motion to discharge based upon statutory speedy trial grounds is a final, appealable order, because it is an order affecting a substantial right made during a special proceeding. See, *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860 (2005); *State v. Jacques, supra*. An appeal from a final order may raise, on appeal, every issue presented by the order that is the subject of the appeal. *State v. Loyd, supra*. Thus, the overruling of a motion alleging the denial of a speedy trial based upon constitutional grounds pendent to a nonfrivolous statutory claim may be reviewed upon appeal from that order. However, Wilson's counsel conceded during the hearing on the motion for discharge that the statutory right to a speedy trial had not been violated, and this appeal is based solely on an alleged denial of Wilson's right to a speedy trial guaranteed by U.S. Const. amend. VI. We determine that Wilson's concession renders his statutory speedy trial claim legally frivolous. See *Cole*

*v. Blum*, 262 Neb. 1058, 637 N.W.2d 606 (2002) (frivolous legal position is one wholly without merit, that is, without rational argument based on law or on evidence). The issue in this case is whether the denial of the motion for discharge, based upon a constitutional right and in the absence of a nonfrivolous statutory claim, is a final, appealable order or is interlocutory.

In *United States v. MacDonald*, 435 U.S. 850, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978), the U.S. Supreme Court held that a defendant may not, before trial, appeal from an order denying a motion to dismiss on constitutional speedy trial grounds. The Court stated that "[t]he resolution of a speedy trial claim necessitates a careful assessment of the particular facts of the case" and that such claims "are best considered only after the relevant facts have been developed at trial." 435 U.S. at 858. The Court reasoned that "[t]he essence of a defendant's Sixth Amendment claim in the usual case is that the passage of time has frustrated his ability to establish his innocence of the crime charged. Normally, it is only after trial that that claim may fairly be assessed." 435 U.S. at 860. In discussing the four factors enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), which factors are to be weighed in determining whether a deprivation of the Sixth Amendment right to a speedy trial has occurred, the *MacDonald* Court stated: "If the factors outlined in *Barker v. Wingo, supra*, combine to deprive an accused of his right to a speedy trial, that loss, by definition, occurs before trial. Proceeding with the trial does not cause or compound the deprivation already suffered." 435 U.S. at 861.

*Special Proceeding.*

▇▇▇▇ Where the law confers a right and authorizes a special application to a court to enforce the right, the proceeding is special, within the ordinary meaning of the term "special proceeding." *State v. Vela*, 272 Neb. 287, 721 N.W.2d 631 (2006). A special proceeding is, by definition, not part of an action. *Id.* An action involves prosecuting the alleged rights between the parties and ends in a final judgment, whereas a special proceeding does not. *Id.*

▇▇▇▇ In *State v. Gibbs*, 253 Neb. 241, 570 N.W.2d 326 (1997), the Nebraska Supreme Court reasoned that a ruling on a motion for discharge was made during a special proceeding

because Neb. Rev. Stat. § 29-1207 (Reissue 1995) conferred a right to a speedy trial and Neb. Rev. Stat. § 29-1208 (Reissue 1995) authorized a special application to a court to enforce the right. A special proceeding may be said to include every statutory remedy which is not in itself an action. *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997). However, the constitutional right to a speedy trial is not a statutory remedy and does not authorize a special application to the court to enforce it. We conclude that a pretrial ruling based on a constitutional right to a speedy trial, unaccompanied by a nonfrivolous claim based upon the statutory right to speedy trial, is not an order made during a special proceeding.

*Substantial Right.*

 A substantial right is an essential legal right, not a mere technical right. *State v. Vela, supra.* A substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant prior to the order from which an appeal is taken. *Id.* A substantial right can be affected by an order if the right is irrevocably lost by operation of the order, while a substantial right is not affected when that right can be effectively vindicated in an appeal from the final judgment. *Id.*

In *State v. Gibbs*, 253 Neb. at 245, 570 N.W.2d at 330, the court stated that a ruling "based upon an accused criminal's nonfrivolous claim that his or her speedy trial rights were violated" affected a substantial right because "the rights conferred on an accused criminal by §§ 29-1207 and 29-1208 would be significantly undermined if appellate review of nonfrivolous speedy trial claims were postponed until after conviction and sentence." As discussed above, there is no nonfrivolous statutory speedy trial claim at issue in the instant case. In *State v. Jacques, supra*, the Nebraska Supreme Court determined that the denial of a motion to discharge affected a substantial right because it effectively denied a defendant's speedy trial rights. However, as the U.S. Supreme Court stated in *United States v. MacDonald*, 435 U.S. 850, 861, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978):

> Unlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a

"right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial.

Further, the right to a speedy trial is different from other constitutional rights in that deprivation of the right may work to the accused's advantage and does not per se prejudice the accused's ability to defend himself or herself. See *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

■ The constitutional right to a speedy trial and the statutory implementation of that right exist independently of each other. *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860 (2005). Determining whether a defendant's constitutional right to a speedy trial has been violated requires a balancing test in which courts must approach each case on an ad hoc basis, utilizing the factors set forth in *Barker v. Wingo, supra.* See *State v. Feldhacker*, 267 Neb. 145, 672 N.W.2d 627 (2004). On the other hand, to obtain absolute discharge under the statutory right enforced by § 29-1208, a defendant must show that he or she was not brought to trial before the running of the time for trial, as extended by excluded periods. A defendant is not required to show prejudice sustained as the result of failure to bring the defendant to trial within 6 months in accordance with § 29-1207(2). *State v. Lafler*, 225 Neb. 362, 405 N.W.2d 576 (1987), *abrogated on other grounds, State v. Oldfield*, 236 Neb. 433, 461 N.W.2d 554 (1990). Thus, speedy trial claims based on statutory grounds are more amenable to resolution prior to trial than are those claims based on constitutional grounds.

Because Congress was dissatisfied with the test to determine if an accused's speedy trial rights have been violated, Congress passed the Speedy Trial Act of 1974. 22A C.J.S. *Criminal Law* § 591 (1989). Certain states, including Nebraska, have speedy trial statutes which pertain to an accused's speedy trial rights and give substance to, and implement, the constitutional protection. *Id.* at § 599. The decisions recognizing the right to an interlocutory appeal from a denial of the statutory right to a speedy trial implement the legislative intent demonstrated in the adoption of the separate statutory right. However, the U.S. Supreme Court has expressly held that no interlocutory appeal lies from a denial

of relief based upon the constitutional rights to speedy trial. See *United States v. MacDonald, supra.* Similarly, the Nebraska Supreme Court has never recognized a right to interlocutory appeal solely concerning the constitutional right to speedy trial. We conclude that the constitutional right to a speedy trial can be effectively vindicated in an appeal after judgment. Wilson's claim that he was denied a speedy trial would not be diminished, and any prejudice resulting from an erroneous denial of his motion for discharge could be remedied by an appeal from the judgment which would become final after sentencing.

## CONCLUSION

We conclude that Wilson's appeal, based on the alleged denial of only his constitutional right to a speedy trial, was not taken from either a final judgment or a final, appealable order. Accordingly, we are without jurisdiction to act and must dismiss the appeal.

APPEAL DISMISSED.