277 Neb. 133
STATE OF NEBRASKA, APPELLEE,
v.
WESLEY L. WILLIAMS, APPELLANT.
No. S-07-1048.
Supreme Court of Nebraska.
Filed February 6, 2009.
Thomas C. Riley, Douglas County Public Defender, for appellant.
Jon Bruning, Attorney General, and James D. Smith for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
This is an appeal from an order of the district court for Douglas County overruling Wesley L. Williams' motion for absolute discharge on statutory speedy trial grounds. We affirm the judgment of the district court.

I. BACKGROUND
On December 8, 2003, Williams was charged by information with first degree murder and use of a deadly weapon to commit a felony. Thereafter, he filed numerous motions and obtained several continuances. Trial was eventually scheduled for September 5, 2006. On August 14, Williams filed a pro se motion to dismiss, which was treated as a motion for discharge on statutory speedy trial grounds and was overruled on August 23.
In case No. A-06-942, Williams appealed the denial of his motion for discharge. The Nebraska Court of Appeals summarily affirmed. Because of the summary disposition, neither the parties nor the district court was apprised of the Court of Appeals' specific reasons for concluding that the speedy trial clock had not run. The mandate was spread on the record of the district court on May 16, 2007.
After additional pretrial proceedings following remand, including continuances granted at Williams' request or with his consent, trial was scheduled for October 1, 2007. On September 28, Williams filed a second motion for discharge. At a hearing held on that date, the State argued that the motion was frivolous, but the district court made a finding that it was not. The court received evidence offered by Williams, including the testimony of the court's former bailiff and the affidavit of Williams' counsel regarding certain docket entries pertinent to the speedy trial calculation. The district court overruled the motion for discharge, and Williams then perfected this appeal, which we moved to our docket on our own motion.

II. ASSIGNMENT OF ERROR
Williams assigns that the district court erred in overruling his motion for discharge, because the State failed to bring his case to trial within the statutory 6-month period required by Neb. Rev. Stat. § 29-1207 (Reissue 2008).

III. STANDARD OF REVIEW
[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[1]
[2] As a general rule, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous.[2]

IV. ANALYSIS

1. SUBJECT MATTER JURISDICTION
In State v. Gibbs,[3] this court held that to the extent Nebraska's speedy trial statutes[4] conferred a right to a speedy trial and authorized a special application to obtain judicial enforcement of that right, "a ruling on a motion for absolute discharge based upon an accused criminal's nonfrivolous claim that his or her speedy trial rights were violated is a ruling affecting a substantial right made during a special proceeding and is therefore final and appealable."[5] We reasoned that the ruling on a motion to discharge affected a substantial right, because "the rights conferred on an accused criminal by §§ 29-1207 and 29-1208 would be significantly undermined if appellate review of nonfrivolous speedy trial claims were postponed until after conviction and sentence."[6] In State v. Jacques,[7] decided 1 week after Gibbs, we reiterated these principles in concluding that an appellate court lacked jurisdiction to adjudicate a statutory speedy trial issue in a direct appeal, because the defendant had not appealed within 30 days of the pretrial ruling denying his motion for discharge.
In this case, the State urges that we overrule Gibbs and Jacques, and hold that the order overruling Williams' motion for discharge on statutory speedy trial grounds was a nonfinal order for which there is no appellate jurisdiction.[8] The State directs our attention to State v. Wilson,[9] decided by the Nebraska Court of Appeals in 2006. In that case, the defendant filed a pretrial motion for discharge, alleging that both his statutory and constitutional speedy trial rights had been violated. After conviction by a jury, but before sentencing, he filed an appeal alleging only that he was denied his constitutional rights to a speedy trial. The Court of Appeals dismissed the appeal after concluding that there was no final, appealable order. The court relied in part upon United States v. MacDonald,[10] which held that a criminal defendant may not, before trial, appeal an order denying his motion to dismiss on constitutional speedy trial grounds. The MacDonald Court reasoned that resolution of a constitutional speedy trial claim "necessitates a careful assessment of the particular facts of the case"[11] by application of the four-part balancing test established by the Court in Barker v. Wingo,[12] which includes a determination of whether delay was prejudicial to the defendant. The Court noted that prior to trial, "an estimate of the degree to which delay has impaired an adequate defense tends to be speculative"[13] and concluded that in most circumstances, the question of whether delay is prejudicial to the defense can only be fairly assessed after trial. In applying the reasoning of MacDonald and distinguishing our holdings in Gibbs and Jacques, the Court of Appeals has correctly noted that "speedy trial claims based on statutory grounds are more amenable to resolution prior to trial than are those claims based on constitutional grounds."[14] Another distinction, as noted in Wilson, is that there is no statutory remedy to enforce a claimed denial of the constitutional right to a speedy trial.
Thus, we are not persuaded by the State's argument that MacDonald and Wilson undermine our reasoning in Gibbs and Jacques. A claimed denial of statutory speedy trial rights does not require any showing of prejudice; on a proper record, it is a relatively simple mathematical computation of whether the 6-month speedy trial clock, as extended by statutorily excludable periods, has expired prior to the commencement of trial. If it has, subjecting a defendant to trial would impair a substantial right in the same manner that rights of an accused criminal would be undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence.[15]
The State argues that we should follow the reasoning of federal courts which have held that because the federal Speedy Trial Act of 1974[16] does not confer a "'right not to be tried'" equivalent to that of the Double Jeopardy Clause, there is no right of interlocutory appeal from an order denying a motion to dismiss on statutory speedy trial grounds.[17] Our speedy trial statute precludes adoption of this reasoning, because the sanction for violation of Nebraska's speedy trial act differs significantly from that of the federal Speedy Trial Act of 1974. If a federal criminal defendant is not brought to trial within the time limit specified in the federal act, the court may dismiss with or without prejudice.[18] In making this determination, a federal court may consider various factors, including "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the act] and on the administration of justice."[19]
Under Nebraska law, however, a judge has no such discretion. If a defendant is not brought to trial within the time period specified in the speedy trial act, the statute provides that "he shall be entitled to his absolute discharge from the offense charged and for any other offense required by law to be joined with that offense."[20]
By using this language, the Nebraska Legislature has bestowed a "right not to be tried" upon a defendant who is not brought to trial within the statutory time period, as extended by excludable periods. Gibbs likened this right to the rights granted by the Double Jeopardy Clause and determined that the rights conferred on a criminal defendant by §§ 29-1207 and 29-1208 would be significantly undermined if appellate review of nonfrivolous speedy trial claims were postponed until after conviction and sentence. Because the sanction for violation of the federal act differs significantly from that in the Nebraska statute, this argument does not persuade us that Gibbs and Jacques were wrongly decided.
The State also argues that a right of interlocutory appeal from an order denying absolute discharge delays criminal trials. While this is true to some degree, Nebraska's speedy trial statute contemplates and indeed permits delay instigated by a defendant, in that it excludes from the speedy trial computation any periods of delay resulting from "pretrial motions of the defendant" and "a continuance granted at the request or with the consent of the defendant or his counsel."[21] As discussed below, most of the delay in this case resulted from such motions filed by Williams in the district court. The fact that some additional delay results from an interlocutory appeal initiated by a criminal defendant from the denial of a motion for discharge does not justify overruling Gibbs and Jacques.
Finally, we are not persuaded by the argument that we should change the law because of what the State perceives as abuse by criminal defendants of the right to take an immediate appeal from an order denying a motion for discharge on statutory speedy trial grounds. As specifically stated in Gibbs, the right to appeal is triggered by denial of a "nonfrivolous claim" of violation of the statutory right to a speedy trial.[22] We note that the district court made a specific finding that Williams' statutory speedy trial claim presented in this appeal was not frivolous. For these reasons, we decline the State's invitation to overrule Gibbs and Jacques, and we conclude on the basis of those precedents that we have jurisdiction to reach and resolve the merits of this appeal.

2. CALCULATION OF SPEEDY TRIAL TIME
[3,4] Nebraska's speedy trial statutes provide in part that "[e]very person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section."[23] Where a felony offense is involved, the 6-month speedy trial period commences to run from the date the indictment is returned or the information filed, and not from the time the complaint is filed.[24] Certain periods of delay are excluded from the speedy trial computation, including:
(a) The period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . the time from filing until final disposition of pretrial motions of the defendant, including motions to suppress evidence, motions to quash the indictment or information, demurrers and pleas in abatement . . . .
(b) The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel.[25]
To calculate the time for speedy trial purposes, a court must exclude the day the information was filed, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4) to determine the last day the defendant can be tried.[26]
[5,6] The plain terms of § 29-1207(4)(a) exclude all time between the time of the filing of a defendant's pretrial motions and their final disposition, regardless of the promptness or reasonableness of the delay.[27] Such motions include a defendant's motion to suppress evidence and a motion for discovery filed by the defendant.[28] The excludable period commences on the day immediately after the filing of a defendant's pretrial motion.[29] Final disposition under § 29-1207(4)(a) occurs on the date the motion is "'"granted or denied."'"[30] Pursuant to § 29-1207(4)(a), it is presumed that a delay in hearing defense pretrial motions is attributable to the defendant unless the record affirmatively indicates otherwise.[31]
[7,8] An interlocutory appeal taken by the defendant is a period of delay resulting from other proceedings concerning the defendant within the meaning of § 29-1207(4)(a).[32] In calculating the number of excludable days resulting from an interlocutory appeal, for speedy trial purposes, the period to be excluded due to the appeal commences on and includes the date on which the defendant filed his or her notice of appeal.[33] Where further proceedings are to be had following an interlocutory appeal, for speedy trial purposes, the period of time excludable due to the appeal concludes when the district court first reacquires jurisdiction over the case by taking action on the mandate of the appellate court.[34]
[9] As noted, § 29-1207(4)(b) excludes delays resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel.[35] the calculation for a continuance begins the day after the continuance is granted and includes the day on which the continuance ends.[36] In the case of an indefinite continuance, the calculation runs from the day immediately following the grant of the continuance and ends when the defendant takes some affirmative action, such as requesting a trial date, to show his or her desire for the indefinite continuance to end or, absent such a showing, on the rescheduled trial date.[37]
[10-12] Under § 29-1208, if a defendant is not brought to trial before the running of the time for trial, as extended by excludable periods, he or she shall be entitled to his or her absolute discharge.[38] the burden of proof is upon the state to show that one or more of the excluded time periods under § 29-1207(4) are applicable when the defendant is not tried within 6 months.[39] To overcome a defendant's motion for discharge on speedy trial grounds, the State must prove the existence of an excludable period by a preponderance of the evidence.[40]

3. COURT RECORD
Two dates pertinent to our analysis are certain: December 8, 2003, the date on which the information was filed, and September 28, 2007, the date on which Williams filed the motion for discharge which is the subject of this appeal. Obviously, unless significant portions of the nearly 4-year span between those dates constitute excludable periods under § 29-1207, the State's time in which to bring Williams to trial has expired. Our task in this appeal is to determine whether the district court erred in concluding that it had not. This task is made more difficult by the fact that the district court made only general findings. In its ruling on the initial motion for discharge, the court found that all prior trial dates "have all been continued at the request of the defendant for a variety of reasons" and that according to its unspecified calculations, "the six months speedy trial has not run." In ruling on the second motion, the motion at issue in this appeal, the court concluded that it was "well within the parameters" of the speedy trial statute. At the time of these rulings, neither the speedy trial statute nor our prior case law required more specific findings of excludable periods under § 29-1207(4)(a) and (b).
[13] We have required specific findings with respect to the excludable period under another provision of the speedy trial statutes. Section 29-1207(4)(f) provides that other periods of delay not specifically enumerated in the statute may be excluded in the speedy trial computation, "but only if the court finds that they are for good cause." In State v. Alvarez,[41] we held prospectively that in order to facilitate appellate review, trial courts must make specific findings with respect to § 29-1207(4)(f) "as to the cause or causes of such extensions and the period of extension attributable to such causes." We now conclude that similar findings are necessary in order to facilitate appellate review of all determinations of excludable periods under § 29-1207(4). Effective March 9, 2009, when ruling on a motion for absolute discharge pursuant to § 29-1208, the trial court shall make specific findings of each period of delay excludable under § 29-1207(4)(a) to (e), in addition to the findings under § 29-1207(4)(f) currently required by Alvarez. Such findings shall include the date and nature of the proceedings, circumstances, or rulings which initiated and concluded each excludable period; the number of days composing each excludable period; and the number of days remaining in which the defendant may be brought to trial after taking into consideration all excludable periods.

4. RESOLUTION OF WILLIAMS' CLAIM
In the absence of any excludable period, the 6-month period in which the State was required to bring Williams to trial would have begun on December 9, 2003, and ended on June 8, 2004.

(a) First Excludable Period: January 17 to July 8, 2004 (174 Days)
The parties agree that an excludable period under § 29-1207(4)(a) began with Williams' plea in abatement and a motion for discovery on January 16, 2004. They disagree as to when this period ended. Williams contends that it was on July 7, 2004, when the court overruled his plea in abatement. The State argues that the excludable period continued until October 22, 2004, the date of a journal entry ordering "'[m]utual and reciprocal discovery . . . pursuant to statute.'"[42] Williams argues that this entry was made long after the actual ruling on his discovery motion and could not extend the excludable period beyond July 7.
The record supports Williams' argument on this point. At a hearing on Williams' motion for discharge, a former district court bailiff testified that she made the October 22, 2004, journal entry which refers to "reciprocal discovery" and that it was made "for purposes of housekeeping" to reflect an order which had occurred previously at the time of arraignment. This testimony is consistent with the July 7 journal entry in which the court overruled the plea in abatement and further noted: "Nothing under advisement." Also, a motion for continuance filed by Williams on January 19, 2005, states that discovery had been completed and that the State had provided defense counsel with certain documents. The State did not prove by a preponderance of the evidence that the excludable period attributable to Williams' discovery motion and plea in abatement extended beyond July 7, 2004. Thus, the first excludable period commenced on January 17, 2004, the day after the filing of the defense motions, and ended on July 8, 2004, the date the order was file stamped, a total of 174 days.

(b) Second Excludable Period: October 6, 2004, to August 14, 2006 (678 days)
On September 27, 2004, the district court entered an order setting the case for trial commencing on November 8. On October 5, Williams filed a motion for continuance. Williams filed other motions as well, and the trial was originally rescheduled to begin on February 7, 2005, "[b]y agreement of the parties." Williams filed additional motions for continuance and other motions in 2005 and 2006. He contends that these motions resulted in an excludable period of 614 days, ending on June 12, 2006, when a pretrial hearing was held and trial was set to commence on September 5.
We disagree with Williams' reasoning regarding the end of this excludable period. At a hearing on November 21, 2005, Williams' counsel made an oral motion for a continuance due to the continued unavailability of a key defense witness who resided in another state. Williams confirmed that he was asking for the continuance. Counsel could not provide a specific date when the witness would be available, but agreed to give the judge a "timeline" regarding the process of serving the witness with a subpoena in another state. The court granted the indefinite continuance. We agree with the reasoning of the Court of Appeals in State v. Dailey[43] which was derived from our holding in State v. Andersen,[44] that when a defendant has sought and obtained an indefinite continuance, it is his or her affirmative duty to end the continuance by giving notice of request for trial. Otherwise, the court can end the continuance by setting a trial date or specifically ordering that the continuance has ended. When the court ends an indefinite continuance by setting a trial date, the excludable period resulting from the indefinite continuance ends on the date set for trial and not the date on which the trial date is set.[45]
We find no indication in the record that Williams took affirmative action to end the indefinite continuance prior to the court's order of June 12, 2006. Applying the foregoing reasoning, we conclude that the excludable period which began on the day immediately following the filing of Williams' initial motion for continuance on October 5, 2004, did not end on June 12, 2006, when the court set a trial date. Rather, the excludable period was ongoing as of August 14, when Williams filed a motion to dismiss on speedy trial grounds, thus commencing a third excludable period. We therefore conclude that the second excludable period began on October 6, 2004, and ended on August 14, 2006, a period of 678 days. Because the second and third excludable periods overlap, we include August 14, 2006, in our count of the number of days in the second excludable period only.

(c) Third Excludable Period: August 15 to 23, 2006 (9 days)
The district court treated the motion to dismiss filed by Williams on August 14, 2006, as a motion for absolute discharge on speedy trial grounds, and denied it on August 23, 2006. Counting August 15 as the first day of this period, it included 9 days.

(d) Fourth Excludable Period: August 25, 2006, to May 16, 2007 (265 days)
Williams filed his first notice of appeal on August 25, 2006. On May 10, 2007, the Court of Appeals issued its mandate affirming the denial of Williams' first motion for discharge. The district court first took action on the mandate on May 16 by scheduling a pretrial hearing for May 23, thus ending the fourth excludable period which comprised 265 days.

(e) Fifth Excludable Period: June 5 to September 28, 2007 (116 days)
The record reflects that on May 23, 2007, the court continued the pretrial hearing to May 29, because both counsel were appearing in the same criminal trial before another judge of the same court. There is no indication that Williams specifically requested or consented to a continuance at this time. On May 29, Williams' counsel appeared at the rescheduled prehearing conference, but the prosecutor did not because she was in trial. The court continued the pretrial hearing to June 4. Again, the record does not indicate that Williams requested or consented to this continuance. None of this time is excludable.
Both counsel appeared on June 4, 2007, and the record indicates that the matter was continued to June 11 "on the motion of the Defense." A June 11 docket entry states that both counsel appeared and that the matter was continued "on the motion of the Defense so counsel to [sic] speak to Defendant about possible plea." The next docket entry, dated June 15, 2007, indicates that the pretrial hearing was continued to June 19 "on the motion of the Defense from 06/11/2007." A June 19 docket entry indicates that a pretrial hearing was held and that the matter was "continued for a jury trial commencing 10/01/2007" with another pretrial hearing set for September 18, 2007. The docket entry concludes: "Both continuances are on the motion of the Defense." Williams filed his second motion for discharge on September 28, 2007.
The record thus reflects that all continuances granted on and after June 4, 2007, were at Williams' request or with his consent. Thus, the 116-day period from June 5 to September 28, 2007, was excludable under § 29-1207(4)(b).

5. SUMMARY
Based on the foregoing, there were 1,242 days of excludable time pursuant to § 29-1207(4)(a) and (b). Thus, the period in which the State could bring Williams to trial was extended from June 8, 2004, to November 2, 2007. Because there were 34 days remaining on the speedy trial clock when Williams filed his motion for discharge on September 28, 2007, the district court did not err in overruling the motion.

V. CONCLUSION
For the reasons discussed, we affirm our jurisdiction to resolve nonfrivolous interlocutory appeals from the denial of a motion for absolute discharge based on Nebraska's speedy trial statutes, and we affirm the judgment of the district court denying Williams' motion for discharge.
Affirmed.
WRIGHT, J., concurring.
In a criminal prosecution, the accused has the right to a trial within 6 months of the indictment or the filing of the information. See Neb. Rev. Stat. § 29-1207 (Reissue 2008). I have no problem with this requirement and would not overrule our prior decisions that permit an accused to assert this right prior to trial. See, State v. Jacques, 253 Neb. 247, 570 N.W.2d 331 (1997); State v. Gibbs, 253 Neb. 241, 570 N.W.2d 326 (1997).
I write, however, to point out that the statutes relating to the right to a speedy trial are flawed and are subject to abuse. The present case illustrates this point.
Because of continuances granted at the accused's request or with his consent, trial has been postponed for years beyond the 6-month period. Following each continuance, the State must set another trial date to comply with the 6-month requirement. If the State does not try the accused within such period, the accused is entitled to an absolute discharge. See Neb. Rev. Stat. § 29-1208 (Reissue 2008). Similar to the crocodile that followed "Captain Hook," time keeps following the State, and the accused hopes the State will slip and fall victim to the 6-month trial clock.
The solution is not in overruling Jacques and Gibbs, but in amending the speedy trial statutes. If an accused extends the trial date beyond the required 6 months, then the accused should be deemed to have waived this 6-month trial requirement. The accused is still protected by the constitutional right to a speedy trial. The constitutional right and the statutory implementation of that right under § 29-1207 exist independently of each other. State v. Vrtiska, 225 Neb. 454, 406 N.W.2d 114 (1987).
In the case at bar, the accused has postponed his trial for years and still asserts he was denied his statutory right to a speedy trial. The information was filed December 8, 2003, and the accused has continued the trial from that date. One has only to read the opinion of this court to observe the mental gymnastics required to determine whether the State has slipped and fallen victim to the law.
I concur in the result, but point out that the law is flawed.
HEAVICAN, C.J., and CONNOLLY, J., join in this concurrence.
NOTES
[1] State v. Rodriguez-Torres, 275 Neb. 363, 746 N.W.2d 686 (2008); State v. Nelson, 274 Neb. 304, 739 N.W.2d 199 (2007).
[2] State v. Sommer, 273 Neb. 587, 731 N.W.2d 566 (2007); State v. Vasquez, 16 Neb. App. 406, 744 N.W.2d 500 (2008).
[3] State v. Gibbs, 253 Neb. 241, 570 N.W.2d 326 (1997).
[4] See Neb. Rev. Stat. §§ 29-1201 to 29-1209 (Reissue 2008).
[5] State v. Gibbs, supra note 3, 253 Neb. at 245, 570 N.W.2d at 330.
[6] Id.
[7] State v. Jacques, 253 Neb. 247, 570 N.W.2d 331 (1997).
[8] See State v. Vela, 272 Neb. 287, 721 N.W.2d 631 (2006) (holding appellate court has duty to determine its jurisdiction).
[9] State v. Wilson, 15 Neb. App. 212, 724 N.W.2d 99 (2006).
[10] United States v. MacDonald, 435 U.S. 850, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978).
[11] Id., 435 U.S. at 858.
[12] Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).
[13] United States v. MacDonald, supra note 10, 435 U.S. at 858.
[14] State v. Wilson, supra note 9, 15 Neb. App. at 220, 724 N.W.2d at 107.
[15] See, Abney v. United States, 431 U.S. 651, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977); State v. Milenkovich, 236 Neb. 42, 458 N.W.2d 747 (1990).
[16] 18 U.S.C. §§ 3161 to 3174 (2006).
[17] See, e.g., United States v. Mehrmanesh, 652 F.2d 766, 769 (9th Cir. 1981).
[18] U.S.C. § 3162(a)(2).
[19] Id.
[20] § 29-1208.
[21] § 29-1207(4)(a) and (b).
[22] State v. Gibbs, supra note 3, 253 Neb. at 245, 570 N.W.2d at 330.
[23] § 29-1207(1).
[24] State v. Karch, 263 Neb. 230, 639 N.W.2d 118 (2002).
[25] § 29-1207(4).
[26] State v. Sommer, supra note 2; State v. Baker, 264 Neb. 867, 652 N.W.2d 612 (2002). See, also, State v. Feldhacker, 11 Neb. App. 608, 657 N.W.2d 655 (2003), affirmed as modified 267 Neb. 145, 672 N.W.2d 627 (2004).
[27] See, State v. Covey, 267 Neb. 210, 673 N.W.2d 208 (2004); State v. Turner, 252 Neb. 620, 564 N.W.2d 231 (1997).
[28] State v. Dockery, 273 Neb. 330, 729 N.W.2d 320 (2007); State v. Washington, 269 Neb. 728, 695 N.W.2d 438 (2005).
[29] State v. Baker, supra note 26; State v. Feldhacker, supra note 26.
[30] State v. Washington, supra note 28, 269 Neb. at 731, 695 N.W.2d at 440.
[31] State v. Turner, supra note 27.
[32] See State v. Ward, 257 Neb. 377, 597 N.W.2d 614 (1999), disapproved on other grounds, State v. Feldhacker, supra note 26.
[33] State v. Baker, supra note 26; State v. Ward, supra note 32.
[34] Id.
[35] State v. McHenry, 268 Neb. 219, 682 N.W.2d 212 (2004).
[36] See State v. Blakeman, 16 Neb. App. 362, 744 N.W.2d 717 (2008).
[37] See, State v. Schmader, 13 Neb. App. 321, 691 N.W.2d 559 (2005); State v. Dailey, 10 Neb. App. 793, 639 N.W.2d 141 (2002).
[38] See, State v. Sommer, supra note 2; State v. Baker, supra note 26.
[39] State v. Sommer, supra note 2.
[40] Id.
[41] State v. Alvarez, 189 Neb. 281, 292, 202 N.W.2d 604, 611 (1972).
[42] Brief for appellee at 14.
[43] State v. Dailey, supra note 37.
[44] State v. Andersen, 232 Neb. 187, 440 N.W.2d 203 (1989).
[45] State v. Dailey, supra note 37. See, also, State v. Schmader, supra note 37.