State of Nebraska, appellee, v. Frederick E. McSwine,
also known as Frederick E. Johnson, appellant.
___ N.W.2d ___

Filed March 10, 2015.    No. A-13-887.

1. **Trial: Prosecuting Attorneys.** Whether prosecutorial misconduct is prejudicial depends largely on the facts of each case.

2. **Motions for New Trial: Prosecuting Attorneys: Appeal and Error.** An appellate court reviews a motion for new trial on the basis of prosecutorial misconduct for an abuse of discretion of the trial court.

3. **Trial: Appeal and Error.** In order to preserve, as a ground of appeal, an opponent's misconduct during closing argument, the aggrieved party must have objected to improper remarks no later than at the conclusion of the argument.

4. **Appeal and Error.** Plain error may be found on appeal when an error, unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

5. **Trial: Prosecuting Attorneys.** Prosecutors are charged with the duty to conduct criminal trials in a manner that provides the accused with a fair and impartial trial.

6. **Trial: Prosecuting Attorneys: Words and Phrases.** Generally, prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial.

7. **Trial: Prosecuting Attorneys.** Generally, in assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper; it is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial.

8. **Trial: Prosecuting Attorneys: Due Process.** Prosecutorial misconduct prejudices a defendant's right to a fair trial when the misconduct so infected the trial that the resulting conviction violates due process.

9. **Trial: Prosecuting Attorneys: Appeal and Error.** In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, an appellate court considers the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury; (2) whether the conduct or remarks were extensive or isolated; (3) whether defense counsel invited the remarks; (4) whether the court provided a curative instruction; and (5) the strength of evidence supporting the conviction.

10. **Constitutional Law: Effectiveness of Counsel: Proof.** To sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution, and thereby obtain reversal of a conviction, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, demonstrate a reasonable probability

that but for counsel's deficient performance, the result of the proceeding would have been different.

11. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.

12. **Criminal Law: Evidence: New Trial: Double Jeopardy: Appeal and Error.** Upon finding reversible error in a criminal trial, an appellate court must determine whether the total evidence admitted by the district court, erroneously or not, was sufficient to sustain a guilty verdict; if it was not, then double jeopardy forbids a remand for a new trial.

Appeal from the District Court for Lancaster County: PAUL D. MERRITT, JR., Judge. Reversed and remanded for a new trial.

Mark E. Rappl for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

IRWIN, INBODY, and PIRTLE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Frederick E. McSwine, also known as Frederick E. Johnson, was convicted by a jury of terroristic threats, kidnapping, first degree sexual assault, and use of a deadly weapon to commit a felony. The district court subsequently sentenced McSwine to a total of approximately 57 to 85 years' imprisonment. McSwine here appeals from his convictions. On appeal, McSwine assigns several errors, including that the district court erred in overruling his motion for new trial, which motion was based on allegations of prosecutorial misconduct during closing arguments. McSwine also alleges that he received ineffective assistance of trial counsel in a variety of respects. Most notably, McSwine alleges that his trial counsel was ineffective in failing to object to improper statements made by the prosecutor during closing arguments.

Upon our review, we conclude that the prosecutor committed misconduct in knowingly providing false information to the jury during closing arguments. Such misconduct amounts to plain error which requires a reversal of McSwine's

convictions. In addition, we conclude that McSwine received ineffective assistance of counsel when defense counsel failed to timely object to the prosecutor's false statements. Such ineffective assistance would also require reversal of McSwine's convictions. Because the evidence presented by the State was sufficient to sustain McSwine's convictions, we reverse the convictions and remand for a new trial.

## II. BACKGROUND

The State filed a criminal complaint charging McSwine with terroristic threats, kidnapping, first degree sexual assault, and use of a weapon to commit a felony. The charges against McSwine stem from an incident which occurred between McSwine and C.S. in October 2012. McSwine and C.S. knew each other prior to October 2012 because McSwine had been employed at a gas station that C.S. had frequented. However, the extent of the relationship was disputed at trial.

Evidence adduced by the State established that on the morning of October 13, 2012, McSwine knocked on the door to C.S.' apartment and asked if he could come in the apartment and use the bathroom. This was not the first occasion that McSwine had come to C.S.' apartment and asked to use the bathroom. A few weeks prior to the day in question, McSwine had appeared on C.S.' doorstep with a similar request. On that day, C.S., who was entertaining friends, let him in the apartment. McSwine then left C.S.' apartment immediately after going into the bathroom.

On October 13, 2012, when McSwine again appeared on C.S.' doorstep requesting to use her bathroom, the only other person in her apartment was her boyfriend, who was asleep in her bedroom. She let McSwine into the apartment, and after he went into the bathroom, he returned to the doorway, threatened C.S. with a "sharp instrument," and forced her from the apartment and into his car. McSwine then drove to three separate, isolated areas where he forced C.S. to engage in various sexual acts. After keeping C.S. with him for approximately 5 hours, McSwine permitted C.S. to flee his car. She then ran to a nearby home where the residents called law enforcement.

McSwine disputed the evidence presented by the State. During his trial testimony, he testified that on the morning of October 13, 2012, C.S. accompanied him to his car willingly and consented to engaging in various sexual acts with him. He also testified that at some point during their encounter, C.S. became upset with him after she discovered that he had lied to her about having a charger for his cellular telephone in the car. After she became upset, she began to accuse McSwine of "using [her] for sex." She then asked to get out of his car, and McSwine stopped the car on the side of a road in order to permit her to leave. During closing arguments, McSwine's counsel argued that C.S. concocted the story about being kidnapped and sexually assaulted because she was angry with McSwine and because she did not want to get in trouble with her boyfriend or with her parents.

After hearing all of the evidence, the jury convicted McSwine of all four charges: terroristic threats, kidnapping, first degree sexual assault, and use of a weapon to commit a felony. The district court subsequently sentenced McSwine to a total of 56 years 8 months to 85 years in prison.

McSwine appeals his convictions here.

## III. ASSIGNMENTS OF ERROR

On appeal, McSwine assigns five errors. First, McSwine argues that the district court erred in overruling his motion for a new trial, which motion was based on his assertion that the prosecutor committed misconduct during closing arguments. Second, McSwine alleges that the district court erred in failing to admit evidence of a specific instance of C.S.' sexual behavior prior to the day of the assault. Third, McSwine alleges that the district court erred in overruling his motion for a mistrial which was based on allegations of juror misconduct. Fourth, McSwine alleges that the totality of all the errors committed during the proceedings below prohibited him from receiving a fair trial. Finally, McSwine alleges that he received ineffective assistance of trial counsel for a variety of reasons, including that his trial counsel failed to timely object to inappropriate statements made by the prosecutor during closing arguments.

## IV. ANALYSIS

### 1. Prosecutorial Misconduct
### During Closing Arguments

We first address McSwine's assertions regarding prosecutorial misconduct during closing arguments, as these assertions are dispositive of this appeal. McSwine argues both that the district court erred in overruling his motion for new trial, which motion was based on the prosecutorial misconduct, and that his defense counsel provided ineffective assistance for failing to timely object to the prosecutorial misconduct.

### (a) Standard of Review

[1,2] Whether prosecutorial misconduct is prejudicial depends largely on the facts of each case. *State v. Faust*, 269 Neb. 749, 696 N.W.2d 420 (2005). An appellate court reviews a motion for new trial on the basis of prosecutorial misconduct for an abuse of discretion of the trial court. *State v. Castor*, 257 Neb. 572, 599 N.W.2d 201 (1999).

### (b) Factual Background

At trial, the State introduced into evidence the substance of multiple text messages transmitted from McSwine to his wife and from McSwine to a friend. These text messages were sent on October 13, 2012, after C.S. left McSwine's car and ran to a nearby residence. Because these text messages are central to McSwine's assertions regarding prosecutorial misconduct, we briefly recount the substance of the messages here.

The first collection of text messages was sent from McSwine to his wife. In those messages, he tells her that he "messed up bad" and that "[c]ops are probably going to be looking for me [and] if they are I'm going to run." McSwine apologizes to his wife and indicates that he "[doesn't] deserve [her and wished he] didn't f*** everything up." In a later text message from McSwine to his wife, he asks her if she "would give [him] up even if [he] was dead wrong and did some foul s***." McSwine then discusses running away to Mexico or to a "reservation."

The second collection of text messages was sent from McSwine to a friend. In these messages, McSwine indicates

that he got himself into trouble, that he "might be taking a trip," and that he doesn't know "what [he] was thinking." McSwine then states that he "f*** this all up."

During the trial, the State suggested that these text messages demonstrated McSwine's feelings of guilt and remorse about kidnapping and sexually assaulting C.S. The State's contentions can be summarized as follows: McSwine knew that C.S. had run to a residence and assumed that she would report everything that had happened to her that day to law enforcement. In addition, McSwine knew that C.S. could identify him, because of their prior interactions at the gas station where he worked. Accordingly, McSwine knew that it was only a matter of time before the police started to look for him and he was arrested.

Contrary to the State's suggestions about the text messages, during McSwine's testimony, he testified that the content of the text messages did not have to do with kidnapping or sexually assaulting C.S. Rather, he testified that his guilt, remorse, and concern about being arrested stemmed from an incident that occurred earlier in the day on October 13, 2012, and had nothing to do with C.S. McSwine testified that in the early morning hours of October 13, he was selling drugs to a friend of a friend when he became concerned that the buyer was going to rob him. McSwine hit the buyer and ran to a nearby house. An elderly woman confronted him when he entered the house, and he apologized and ran back outside. McSwine testified that at the time of this incident, he was high on methamphetamines. He testified that he assumed he would be facing multiple charges for this encounter and that, because he was on parole, the charges would probably be significant.

During the State's closing argument, the prosecutor specifically disputed McSwine's testimony about the motivation for the text messages. In fact, the prosecutor informed the jury that McSwine's testimony that he trespassed by walking into someone's house was "unsupported by any evidence at all. It's just him saying that that happened." Later, in the prosecutor's rebuttal, he again indicates to the jury, "There is nothing that supports [McSwine's] statement or his testimony that

he ran through some house . . . nothing. It's just his word." McSwine's counsel did not object to either of these comments by the prosecutor.

During deliberations, the jurors asked a question of the court regarding the prosecutor's statements during closing arguments. Specifically, the jury asked, "Did [the prosecutor] say that there was no evidence . . . including a police report . . . of . . . McSwine's presence in a local house . . . ?" The court responded to the jury's question by informing the jury that it had all of the evidence it was going to receive in the case. Both the State and defense counsel agreed with the court's handling of the question.

After the jury returned its guilty verdict, McSwine filed a motion for new trial. The crux of McSwine's argument in the motion was the prosecutor's misleading statements during closing arguments that there was no evidence to support McSwine's testimony that he had trespassed through a house in the early morning hours of October 13, 2012. McSwine alleged that, although no such evidence was offered or admitted at trial, the prosecutor knew that there was, in fact, evidence of the trespass, including multiple police reports. These police reports were provided to defense counsel by the prosecutor as part of the discovery process.

In support of McSwine's motion for new trial, he offered numerous exhibits into evidence. Two of these exhibits are police reports regarding a trespass which occurred on October 13, 2012. These reports indicate that McSwine was identified by the homeowner as the person who came into her home and that, as a result, McSwine was a suspect in that incident. A third exhibit is the affidavit of defense counsel. In that affidavit, counsel states that he did not object to the prosecutor's statement that there was no evidence of the trespass, because he thought that the prosecutor was arguing that there was no such evidence "'presented at trial.'" Counsel states that the failure to object was a mistake and not a matter of trial strategy.

After a hearing, the district court overruled McSwine's motion for a new trial. Ultimately, the court found that McSwine did not object to the prosecutor's statements during

closing arguments and that, as a result, the claims raised in the motion for new trial were not timely raised.

### (c) Analysis

On appeal, McSwine alleges that the district court erred in failing to grant him a new trial in light of the prosecutor's false and misleading statements during closing arguments. While he acknowledges that defense counsel did not timely object to the prosecutor's comments prior to submission of the case to the jury, he asserts that the prosecutor's closing remarks deprived him of his right to a fair trial and that reversal under the plain error standard is proper. We find that McSwine's assertion has merit.

[3,4] Because McSwine did not timely object to the challenged comments, we review this issue only for plain error. See, *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013) (in order to preserve, as ground of appeal, opponent's misconduct during closing argument, aggrieved party must have objected to improper remarks no later than at conclusion of argument); *State v. Godinez*, 190 Neb. 1, 205 N.W.2d 644 (1973) (objection to prosecutorial misconduct made during closing argument is not timely made if it is raised for first time in affidavit in support of motion for new trial). Plain error may be found on appeal when an error, unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Alarcon-Chavez*, 284 Neb. 322, 821 N.W.2d 359 (2012). But, as the Nebraska Supreme Court has noted, "'the plain-error exception to the contemporaneous-objection rule is to be "used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result."'" *Id.* at 336, 821 N.W.2d at 369 (quoting *United States v. Young*, 470 U.S. 1, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985)). See, also, *State v. Barfield*, 272 Neb. 502, 723 N.W.2d 303 (2006), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

[5,6] Prosecutors are charged with the duty to conduct criminal trials in a manner that provides the accused with a fair

and impartial trial. *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2014). Because prosecutors are held to a high standard for a wide range of duties, the term "prosecutorial misconduct" cannot be neatly defined. Generally, prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial. *Id*.

[7] Generally, in assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper; it is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial. *State v. Watt, supra*. The first step in our analysis, then, is to determine whether the prosecutor's statements to the jury that there was no evidence to support McSwine's testimony regarding his trespass and other illegal activities in the early morning hours of October 13, 2012, were improper.

Evidence offered by McSwine at the hearing on his motion for new trial revealed that the prosecutor's statements about the lack of evidence supporting McSwine's testimony were misleading. On two separate occasions, the prosecutor told the jury that there was no evidence which supported McSwine's testimony that on October 13, 2012, prior to his interaction with C.S., he had committed various criminal offenses, including trespassing through a residence. The prosecutor's comments were not qualified in a way so as to suggest that there was simply no evidence presented at the trial. Instead, the prosecutor unambiguously stated that the only evidence of the trespass was McSwine's testimony: "There is nothing that supports [McSwine's] statement or his testimony that he ran through some house . . . nothing. It's just his word." These comments were misleading in that they made it appear to the jury as though McSwine's explanation about why he sent the incriminating text messages lacked any credibility, when, in fact, there was evidence that McSwine had committed other criminal acts on October 13 which in no way involved C.S.

Even more concerning than the effect these false statements had on the jurors is the evidence that the prosecutor knew the statements to be false or misleading when making them.

The prosecutor knew that there was, in fact, evidence about the trespass, because he forwarded to defense counsel police reports about that trespass and about McSwine's being the one who committed the trespass. In addition, defense counsel stated in his affidavit that he and the prosecutor had a discussion about the trespass prior to trial. At that time, the prosecutor specifically indicated that he was not going to offer any evidence about that act at trial.

Because the prosecutor's comments were misleading and were made with knowledge of their inaccuracy and untruthfulness, we conclude that the comments were improper in nature.

[8,9] We now turn to a discussion about whether the improper comments prejudiced McSwine's right to a fair trial. Prosecutorial misconduct prejudices a defendant's right to a fair trial when the misconduct so infected the trial that the resulting conviction violates due process. *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2014). Whether prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole. *Id*. In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, we consider the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury; (2) whether the conduct or remarks were extensive or isolated; (3) whether defense counsel invited the remarks; (4) whether the court provided a curative instruction; and (5) the strength of evidence supporting the conviction.

As we discussed above, the prosecutor's statements misled the jury about the credibility of McSwine's testimony regarding the trespass and, thus, regarding the rationale behind his incriminating text messages. The effect these comments had on the jury is especially concerning in a case like this, where the credibility of the witnesses was a key factor. There was conflicting evidence presented as to whether the sexual encounter between McSwine and C.S. was forced or consensual. The case ultimately came down to a question of whether the jury believed C.S.' version of events or McSwine's version, and the incriminating text messages authored by McSwine were

a key piece of evidence in evaluating McSwine's version of events.

Given the prosecutor's misleading comments during closing arguments, the jury could have reasonably discounted McSwine's testimony about the rationale for the text messages and, perhaps more significantly, could have discounted McSwine's credibility altogether. While the false comments were isolated in that they occurred only during the prosecutor's closing argument and his rebuttal argument, the limited number of times the false information was provided to the jury is tempered by the timing of the false information. The comments were repeated on at least two separate occasions at the very end of the trial proceedings, directly before the jury began its deliberations. And it is clear that the prosecutor's false comments were at the forefront of the jurors' minds during their deliberations as the group specifically asked the court whether there was any evidence, including a police report, about the trespass. Such a question suggests that the jury was specifically contemplating the credibility of McSwine's testimony and relying on the prosecutor's comments during closing arguments to assist in its determination.

In addition, because McSwine's defense counsel did not timely object to the prosecutor's false statements, the district court did not specifically instruct the jury not to consider such comments, nor did the court provide any sort of curative instruction to the jury.

Considering the context of the prosecutor's deliberate and misleading comments and the trial as a whole, we conclude that this is an instance in which unobjected-to prosecutorial misconduct constitutes plain error demanding a reversal of McSwine's convictions.

In his appeal, McSwine also argues that his convictions require reversal because defense counsel provided ineffective assistance when he failed to timely object to the prosecutor's false and misleading statements about the existence of evidence to support his explanation about the text messages. For the sake of completeness, we are compelled to find that this assertion also has merit. Defense counsel provided

deficient performance and such deficient performance prejudiced McSwine's ability to receive a fair trial.

[10] The Nebraska Supreme Court has previously adopted the two-part test for proving a claim of ineffective assistance of counsel set forth by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution, and thereby obtain reversal of a conviction, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. See, e.g., *State v. Clausen*, 247 Neb. 309, 527 N.W.2d 609 (1995). Essentially, the defendant must establish that his attorney failed to perform at least as well as a lawyer with ordinary training and experience in criminal law and must demonstrate how he was prejudiced in the defense of the case as a result of the attorney's actions or inactions. *Id*.

Defense counsel's performance was deficient when he failed to timely object to the prosecutor's misleading statements during closing arguments about the lack of any evidence to support McSwine's testimony about the trespass. As we concluded above, the prosecutor's statements amounted to misconduct and, had defense counsel objected to those statements, such objection would have been successful. Based on the affidavit submitted by defense counsel in support of McSwine's motion for new trial, defense counsel knew or should have known that the prosecutor's statements were false and should have recognized the detrimental effect such statements would have had on McSwine's defense. In fact, in that same affidavit, defense counsel admitted that he had simply "misheard" the prosecutor's statements and that had he heard the statements correctly, he would have objected and made a motion for a mistrial. We read defense counsel's comments as an admission that his performance was deficient.

Defense counsel's deficient performance in failing to object to the prosecutor's statements prejudiced McSwine's defense.

The prosecutor's statements were misleading and, at the very least, implied that McSwine had fabricated his story about the events of the early morning hours of October 13, 2012, prior to his encounter with C.S. and, thus, had fabricated his explanation for the incriminating text messages. In a case such as this where the credibility of the witnesses, and in particular the credibility of McSwine and C.S., was the crux of the evidence, defense counsel's failure to challenge the prosecutor's false and misleading statements was clearly prejudicial to McSwine's defense.

Ultimately, we find that McSwine has demonstrated that there is a reasonable probability that but for his defense counsel's deficient performance, the result of the proceeding would have been different. Therefore, we conclude that McSwine received ineffective assistance of counsel and that this ineffective assistance would also necessitate reversal of his convictions.

## 2. Remaining Assignments
### of Error

Because we reverse McSwine's convictions, and because we conclude that two of the remaining assignments of error are unlikely to reoccur, and a third may reoccur but must be decided contextually in the nuanced environment of the new trial, we need not address the remaining assignments of error.

[11] An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it. *State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015).

It does not seem likely that the circumstances which form McSwine's argument regarding juror misconduct would reoccur in a new trial. Similarly, we cannot assume that the exact same circumstances which form McSwine's numerous claims of ineffective assistance of counsel would reoccur on remand.

McSwine's argument regarding the admissibility of certain evidence having to do with the victim's sexual history is, arguably, distinguishable from the other two assigned, but unaddressed, errors. While the sexual history issue is somewhat

likely to reappear in some shape or form during a new trial, the law in this area (e.g., the rape shield law) is very well established. And while the issue may reappear during a second trial, how it arises exactly will dictate how the trial court applies the rules of evidence to determine the admissibility of any such evidence. We find it in the interest of judicial economy and the realities of trial practice that a meaningful and guiding discussion of this issue in our opinion is not really possible, nor would it be beneficial to the parties or the trial court.

Thus, we do not address any of McSwine's remaining assignments of error.

### 3. Double Jeopardy

[12] Having found reversible error, we must determine whether the totality of the evidence admitted by the trial court was sufficient to sustain McSwine's convictions. Upon finding reversible error in a criminal trial, an appellate court must determine whether the total evidence admitted by the district court, erroneously or not, was sufficient to sustain a guilty verdict; if it was not, then double jeopardy forbids a remand for a new trial. See *State v. Draper, supra*. Upon our review of all of the evidence presented, we conclude that the evidence was sufficient to sustain a guilty verdict, and thus, double jeopardy does not bar a new trial.

### V. CONCLUSION

We conclude that the prosecutor's misleading statements to the jury during closing arguments regarding the existence of evidence to support McSwine's testimony constituted plain error which require a reversal of McSwine's convictions. In addition, we conclude that McSwine received ineffective assistance of counsel when defense counsel failed to timely object to the prosecutor's statements. Such ineffective assistance would also require reversal of McSwine's convictions. Because the evidence presented by the State was sufficient to sustain McSwine's convictions, we reverse the convictions and remand for a new trial.

Reversed and remanded for a new trial.